IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DEAN, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 09 C 1190 |
| | ) | |
| CITY OF CHICAGO and CHICAGO | ) | |
| POLICE OFFICER R. FIORITO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nineteen plaintiffs have sued the City of Chicago and police officer Richard Fiorito pursuant to 42 U.S.C. § 1983. The defendants have moved to sever the plaintiffs' claims or in the alternative for a separate trial of each plaintiff's claim.

### Background

The case began as a single-plaintiff suit by James Dean, Jr. against the City, officer Fiorito, and another officer named Hazard. After the defendants answered the complaint, Dean moved pursuant to Local Rule 40.4 for reassignment to the undersigned judge's calendar of five other suits by different plaintiffs against the City and Fiorito, arguing that the cases were "related" within the meaning of the Rule. The same attorneys represented the plaintiff and defendants in all of the cases; the cases all named the same defendants; and they all included a claim against the City alleging that the constitutional violations were caused by the same policy or practice of the City. The Court entered and continued the motion on the ground that it was premature,

largely because the defendants had not yet answered the complaints in the other cases. The Court suggested to plaintiffs' counsel, however, the possibility of filing a single complaint including the claims of all of the plaintiffs.

About two weeks later, Dean filed an amended complaint joining eighteen other plaintiffs. All of the plaintiffs allege that Fiorito falsely arrested them for driving under the influence (DUI) on various dates from 2003 through early 2009, most of them during the 2007-2009 period. Plaintiffs allege that Fiorito made these false arrests as part of a continuing course of conduct motivated by, among other things, pecuniary gain and anti-gay and lesbian animus.[1] See Am Compl. ¶¶ 12, 21. They allege that Fiorito, who worked a night shift and allegedly resisted shift changes, is paid overtime whenever he goes to court because court appearances always take place outside his shift. Id. ¶ 24. Plaintiffs also allege that although most police officers have a single monthly "key date" for court appearances, which they use on traffic citations they issue, Fiorito is permitted to have four key dates and routinely appears in court on additional days beyond those four – as many as four days per week, plaintiffs allege. Id. ¶ 26.

Plaintiffs allege that the City maintained a common set of policies that caused their false arrests: the agreement to provide overtime pay to officers making court appearances outside their shifts; the absence of limits on overtime pay; the absence of oversight for unnecessary or excessive court appearances and for abuse of the overtime system; the failure to limit the number of key dates per officer; acquiescence

---

[1] The plaintiffs allege they were all arrested in an area of Chicago heavily populated by gays and lesbians and containing numerous bars catering to gays and lesbians.

in Fiorito's refusal to allow a video camera to be installed in his squad car; and the failure to follow up on complaints by other officers about Fiorito's abuse of overtime pay claims. *Id.* ¶ 27. Plaintiffs contend that these policies encouraged Fiorito to make false arrests to increase the amount of his overtime pay. Plaintiffs also allege that Fiorito engaged in a common practice of falsifying certain recurring items in his reports of his DUI arrests and of giving false testimony at trials and other proceedings relating to the arrests. *Id.* ¶¶ 13-19.

## Discussion

Defendants have moved to sever the claims of the plaintiffs pursuant to Federal Rule of Civil Procedure 21, arguing, in essence, that each plaintiff should have to file a separate suit. *See Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1122 (7th Cir. 1999) (successful Rule 21 motion results in independent actions). In the alternative, they seek a separate trial of each plaintiff's claim pursuant to Federal Rule of Civil Procedure 42(b).

Rule 21 is simple and straightforward; it states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The rule gives a court "broad discretion" in determining whether to sever a claim. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

The propriety of joinder is determined pursuant to Federal Rule of Civil Procedure 20(a). Under Rule 20(a)(1),

[p]ersons may join in one action as plaintiffs if:

3

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). Rule 20(a)'s purpose in permitting joinder of separate plaintiffs' claims is "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

It is relatively obvious that the arrest of each plaintiff in this case is a different transaction or occurrence as Rule 20(a) uses those terms. But it is equally true that the arrests are part of a "series of transactions or occurrences," a separate basis permitting joinder under Rule 20. This term "comprehend[s] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974).

The defendants rely heavily on the Seventh Circuit's decision in *Thompson v. Boggs*, 33 F.3d 847 (7th Cir. 1994). In *Thompson*, the first plaintiff alleged that the defendant police officer had subjected him to excessive force in arresting him following a high-speed chase. The district judge denied a motion to add a second plaintiff who also alleged that he was a victim of excessive force by the defendant officer and that the municipality that employed the officer had a policy of condoning his use of excessive force. The court of appeals, noting the broad discretion accorded to a district judge under Rule 20, *see id.* at 858, concluded that the trial had had not "abuse[d] its wide discretion" in denying the second plaintiff's motion to join the case. *Id.* The court noted that the two incidents were separated by about two years, a factor that also exists

in the present case.  *Id.*  Another significant factor not existing in the present case, hwoever, was the fact that the second plaintiff in *Thompson* sought to join the case over a year after Thompson filed suit.  The court noted that allowing joinder "would have delayed adjudication of Thompson's claims."  *Id.*  In the present case, by contrast, the plaintiffs have sought joinder near the outset of the case, and thus their joinder will not delay the adjudication of the original plaintiffs' claims or those of any other plaintiff.

In addition, given the deferential standard of appellate review, the court's determination in *Thompson* that denial of joinder was not an abuse of discretion does not mean that denial of joinder was the only correct choice.  An abuse of discretion "means something more than [the court of appeals'] belief that [it] would have acted differently if placed in the circumstances confronting the district judge.  For an abuse of discretion to occur, the district court's decision must strike [the court of appeals] as fundamentally wrong."  *Johnson v. J.B. Hunt Transport, Inc.*, 280 F.3d 1125, 1131 (7th Cir. 2002).

The arrests in this case are tied together by several factors:  all involved the same arresting officer (Fiorito); all involved a common set of allegedly improper practices by Fiorito, including the institution of false charges for personal gain and the falsification of evidence; and all of them are claimed to have been caused by a common set of policies and practices on the part of the City of Chicago.  That, in addition to the timeliness of plaintiffs' joinder of their claims, is sufficient to permit a determination that they are asserting a right to relief arising out of the same series of transactions or occurrences.  The claimed existence of the City's policies likewise is a question of both fact and law that is common to each plaintiff's claim.  The requirements of Rule 20(a)(1)

5

therefore have been met. *See, e.g., Mosley*, 497 F.2d at 1333-34 (permitting joinder of claims of ten plaintiffs alleging separate incidents of race discrimination baesd on an alleged common practice of discrimination in terms and conditions of employment); *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142-43 (N.D.N.Y. 1999) (permitting joinder of claims of two plaintiffs alleging a separate incidents allegedly part of a common pattern of discriminatory conduct); *Resnick v. Amer. Dental Ass'n*, 90 F.R.D. 530, 535 (N.D. Ill. 1981) (permitting joinder of claims of two plaintiffs alleging distinct injuries arising from an allegedly common policy of discrimination against female employees).

The Court also notes that joinder of the cases will lead to some significant economies. Among other things, the legal viability of the plaintiffs' claims can be determined once rather than nineteen times. In addition, though each arrest and resulting prosecution certainly involves its own set of facts and circumstances, joinder of the cases will permit more economical discovery of the common issues, particularly those relating to the plaintiffs' allegations regarding the City's policies. Moreover, though the Court does not and need not determine at this juncture that all of the cases can be tried in a single proceeding, were this a single-plaintiff case, the plaintiff likely would be permitted to offer some evidence of other similar incidents, subject of course to the limits imposed by Federal Rule of Evidence 403, to show the existence of a policy or practice on the part of the City and a common *modus operandi* on the part of Fiorito. These considerations further buttress the Court's determination that joinder of the plaintiffs' claims under Rules 20 and 21 is appropriate.

Defendants seek, in the alternative, severance of the various plaintiffs' claims for trial pursuant to Federal Rule of Civil Procedure 4(b)2. To decide such a motion, a

6

court considers (among other things) whether joint or separate trials would better promote judicial economy and the prejudice that might be caused by a joint trial on the one hand or by severance on the other. *See, e.g., Houseman*, 171 F.3d at 1121.

Defendants' request for separate trials is premature. The case has not progressed far enough for the Court to determine whether severance for purposes of trial is appropriate. The Court can conceive of scenarios under which a joint trial of all or at least some of the plaintiffs' claims might be appropriate and under which separate trials might better serve the policy considerations underlying Rule 42. As the case develops, the degree of overlap among the various plaintiffs' claims and the prejudice that each side would experience from a joint trial or separate trials will become easier to assess. In the Court's view, the appropriate time to determine that issue will be after the conclusion of discovery and, in all likelihood, after the Court has ruled on dispositive motions. *See, e.g., Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *3 (N.D. Ill. Mar. 1, 2002).

## Conclusion

For these reasons, the Court denies defendants' motion to sever (the denial of the request for separate trials under Rule 42(b) is without prejudice). Defendants are directed to respond to the amended complaint by no later than September 20, 2009. The case is set for a status hearing on September 23, 2009 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 31, 2009