**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES DEAN, JR., CATHERINE GILDEA, TODD SWINGLEY, SHAWN RAUCH, STACIE HUDGENS, STEVE LOPEZ, OSCAR FAEZELL, ANDREW KEIRCUL, JON BARRET, JULIE MATT, BRITTANY SUMMERFORD, ADAM GARVEY, DAVID SIEBERT, JOSEPH SMITH, STEVE DERRY, RYAN NILSON, JESSE LEVIN, STEVE KOPP, DARRELL MITCHELL, JONATHAN ARELLANO, CYNTHIA CARRASCO, ROGELIO CORRAL, DOUGLAS DeRHODES, JOSHUA GOLDBERG, LEX LEAKS, TONY LONG, DAVID LOZADA, ERIC PERINO, GERSON PINEDO, CHRISTOPHER QUINN, PETER RENAULT, KEVIN STEPP, CORINTHIAUS TIBBS, JERRY CHICK, AND MICHAEL VAUGHN. | No. 09 CV 1190 |
| Plaintiffs, | Honorable Judge Kennelly |
| v. | Magistrate Judge Nolan |
| CITY OF CHICAGO, and CHICAGO POLICE OFFICER R. FIORITO, Star # 11624, | **JURY DEMANDED** |
| Defendants. | |

<u>**SECOND AMENDEND COMPLAINT**</u>

NOW COME the PLAINTIFFS, James DEAN, Jr., Catherine GILDEA, Todd,

SWINGLEY, Shawn RAUCH, Stacie HUDGENS, Steve LOPEZ, Oscar FAEZELL, Andrew

KEIRCUL, Jon BARRET, Julie MATT, Brittany SUMMERFORD, Adam GARVEY, David

SIEBERT, Joseph SMITH, Steve DERRY, Ryan NILSON, Jesse LEVIN, Steve KOPP, Darrell

MITCHELL, Jonathan ARELLANO, Cynthia CARRASCO, Rogelio CORRAL, Douglas

DeRHODES, Joshua GOLDBERG, Lex LEAKS, Tony LONG, David LOZADA, Eric PERINO,

Gerson PINEDO, Christopher QUINN, Peter RENAULT, Kevin STEPP, Corinthiaus TIBBS,

Jerry CHICK, and Michael VAUGHN, by and through their attorneys, Jon Erickson, Brendan

Shiller, Michael Oppenheimer, and Laura Bautista of the CIVIL RIGHTS CENTER, LLC, and

complaining of the Defendants, CITY OF CHICAGO and CHICAGO POLICE OFFICER R.

FIORITO, as follows:

## INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiffs'

   rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§

   1983 and 1985; the judicial code 28 U.S.C. §§ 1331 and 1343(a); the Constitution of The

   United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

## PARTIES

3. Plaintiffs were arrested and unlawfully charged with DUI by Defendant Fiorito in the

   Lakeview neighborhood of Chicago, which is in the Northern District of Illinois.

4. Defendant Officer Fiorito is a present employee and agent of the Chicago Police

   Department.  At all times relevant, Defendant Fiorito acted under color of law as a duly

   appointed Chicago Police Officer and within the scope of his employment.

5. Defendant City is a municipal corporation organized under the laws of the State of Illinois.

   It is responsible for the policies, procedures, and practices implemented through its various

   agencies, agents, departments, and employees, and for injury occasioned thereby.  It was

   or is the employer of the Defendant Fiorito.

**BACKGROUND FACTS**

6.   Since at least 2003, Defendant Fiorito has engaged in a continuing course of conduct, in part motivated by both pecuniary gain and anti-gay animus; and also since at least 2003 has conspired with other officers to deprive Plaintiffs and others of their constitutional rights in order to pursue the pecuniary gain and the anti-gay animus.

7.   This course of conduct includes stopping unimpaired drivers without probable cause and charging them with Driving Under the Influence ("DUI"), as part of an ongoing scheme to accumulate overtime pay for court appearances.

8.   All of the Plaintiffs were arrested by Defendant Fiorito.

9.   All of the Plaintiffs' arrests involved a common set of improper practices by Fiorito.

10.   All of the Plaintiffs were arrested and charged with DUI as part of a series of transactions which cumulatively comprise a single continuing course of conduct or scheme.

11.   All of the Plaintiffs' arrests were the result of the institution of false charges for personal gain.

12.   As part of this course of conduct, Defendant Fiorito administered the Standardized Field Performance Tests to all of his arrestees in non-compliance with Chicago Police Department and National Highway Traffic Safety Administration procedures and then falsified police reports and testimony to indicate that he did comply with the procedures.

13.   As part of this course of conduct, Fiorito falsely testified in police reports and in court, with striking similarity, that his arrestees uniformly failed all field sobriety tests.

14.   As part of this course of conduct, Defendant Fiorito routinely prevented his arrestees from taking a breath or blood test by trickery, failing to offer such tests or by falsely attributing a refusal to his arrestee.

15. As part of this course of conduct, Defendant Fiorito routinely testified falsely in his reports that drivers, including all of the Plaintiffs, were "staggering," and/or "cannot keep their balance," "cannot perform tests," "demonstrates nystagmus," "has a strong odor of alcohol," have "red, blood-shot eyes," were "combative" and spoke with "slurred, mumbled, thick-tongued speech."

16. As part of this course of conduct, and with striking similarity from arrest to arrest, Fiorito routinely testified falsely in police reports and in court that drivers "fail to stay in lanes," "swerve, speed, drive without headlights," "almost strike parked cars," and "fail to wear seatbelts."

17. The striking similarities between each of Defendant's reports and the repetitious word choice are not coincidence, but rather a *modus operandi* utilizing a purposeful use of language designed to create the appearance of probable cause and sustain a conviction.

18. Defendant Fiorito works the midnight shift at the 23rd Police District.

19. Defendant Fiorito has made hundreds of DUI arrests per year during his employment with the Chicago Police Department.

20. Police Officers that are regularly scheduled to work during court hours do not necessarily receive overtime for court appearances.

21. Officers that are regularly scheduled to work the midnight shift almost always receive overtime for court appearances as this is work outside of their regular shift.

22. Defendant Fiorito has engaged in a course of conduct to ensure as many court appearances as possible in order to obtain as much overtime pay as possible.  In fact, Defendant Fiorito is in court every day of the week either at the Daley Center or at 26th Street.

4

23. Defendant Fiorito routinely demonstrates his anti-gay animus with language such as "fag," "faggot," and "dyke."

24. On November 4, 2009, the Cook County State's Attorney indicated publicly that because "there are serious questions regarding Fiorito's credibility," Fiorito would no longer be used as witness for the prosecution.  On information and belief, since that announcement, the State's Attorney has been dismissing all Fiorito cases.  As such, the Plaintiffs expect that their pending charges will be dismissed in a manner indicative of innocence.

## THE PATTERN AND PRACTCE

25. The continuing course of conduct described above and below constitutes a pattern and practice, with the silent and implicit approval of unknown supervising officers, as well as the express agreement with and cooperation of Officer J. Hazard and other assisting arresting officers, to obtain financial gain through the unlawful arrests and malicious prosecutions of innocent drivers located near gay and lesbian bars in the "boystown" community.

26. This pattern and practice constitutes a single series of transactions.

27. Fiorito took advantage of a unique set of circumstances in order to ensure great financial gain as payment for his ability to express his anti-gay animus.

28. As a midnight officer, Fiorito is paid overtime every time he goes to court because, under the current police contract, whenever a court appearance is required when one is not on their shift, overtime is guaranteed.  As a midnight officer, Fiorito's court appearances never occur when he was on shift.  Defendant Fiorito works the midnight shift at the 23rd Police District and has always worked this shift while employed by the Chicago Police

Department.  Defendant Fiorito has thwarted all attempts and/or suggestions to change his shift from the midnight shift to some other shift.

29. When the Chicago Police Department removed the "Court Sergeant" position several years ago, they created an opportunity for traffic officers to abuse the overtime system by appearing in court when not subpoenaed or notified to be there.  Fiorito and Hazard routinely appear in court when neither subpoenaed nor notified to be there.

30. Due to the overwhelming volume of Fiorito's arrests (along with a handful of other police officers, including Parker and Haleas, all of whom are or were midnight DUI officers) the City and the Circuit Court of Cook County had to accommodate by adding numerous so-called 'key dates.'  Key dates are the once-a-month dates for which an officer is scheduled to appear in court and for which day his cases are assigned.  The vast majority of police officers have a single key date, meaning that they appear in court once a month. On information and belief, Fiorito has four key dates, but is actually in court every day of the week.

### _MONELL_ FACTS

31. That this pattern and practice was silently condoned by Fiorito's supervisors is shown in the DUI statistics themselves.  The anti-drunk-driving group, Alliance Against Intoxicated Motorists, keeps and publishes state-wide statistics on DUI arrests.  In 2005, six of the eight most prolific DUI writers statewide were midnight traffic enforcement officers in the City of Chicago.  The most prolific was John Haleas, who wrote 374 DUI tickets in 2005 (he wrote 372 in 2004).

32. In 2006, four of the seven most prolific DUI writers were midnight shift traffic enforcement officers in Chicago; Former Chicago Police Officer John Haleas topped the

list.  He was closely followed by Officers Timothy Walter (19th District traffic

enforcement), Fiorito (23rd District traffic enforcement) and Mariellen Balcar (10th

District traffic enforcement).

33. In 2007, Officer Haleas was indicted on charges of perjury and official misconduct related

to his numerous false arrests and malicious prosecutions. That left Officer Walter[1] (298

tickets) and Officer Fiorito (230 tickets).  Number eight in 2007 was Officer Joe Parker

who agreed to resign his office to avoid criminal prosecution.

34. On October 7, 2009, Officer Fiorito was placed on Administrative Leave pending

investigations of the exact same false arrests for overtime scheme as Haleas.  The Cook

County State's Attorney is conducting a grand jury investigation into Officer Fiorito and

publicly stated that there are "serious questions regarding Fiorito's credibility."

35. The eighth biggest DUI writer of 2007, J. Parker, agreed to resign his office and forgo his

pension to avoid criminal prosecution after revelations of perjury and false DUI's.

36. This pattern is not a coincidence; it is the result of the policies of the City of Chicago

which encouraged the abuse of the overtime system.

37. Further evidence of the silent approval of abuse by the City's most prolific DUI writers

comes in the history of traffic enforcement video cameras.  The Chicago Police

Department initiated its pilot program to include video on traffic enforcement units in late

2005.  But, from 2005 through 2007 and into 2008, not one of the most prolific Chicago

Police DUI writers had video surveillance systems in their squad cars.  They all resisted

being given a camera and the CPD acquiesced to the DUI writers' resistance.  It was not

---

[1] This is the same Officer Walter that Judge Kennelly found not credible on five different points of testimony in the
second motion to suppress held in US v. Thompson, 06 CR 440.

until the indictment of Haleas and the revelations of the Parker and Fiorito abuses, coupled with subsequent pressure from civil rights groups, that the CPD began forcing the more prolific DUI writers to use the video cameras.

38. The false arrests and the assigning of the court dates to various different key dates were made possible both by certain City policies that allowed and encouraged overtime abuse and by a silent conspiracy between Fiorito and his supervisors. The City polices that allowed and encouraged the false arrests and overtime abuse include: 1) the agreement to provide overtime to officers making court appearances when not on their shift; 2) the failure to limit the amount of overtime an officer can apply for; 3) the removal of court sergeants from DUI court rooms; 4) the failure to limit the number of key dates an officer can have; 5) lack of oversight or any mechanism for identifying when officers are abusing the overtime system; 6) lack of oversight or any mechanism for identifying when officers are regularly engaging in false arrests; 7) the acquiescence to Fiorito's refusal to use a video camera; and 8) the refusal to report the conclusion of Fiorito's colleagues that he was an "overtime whore."

## THE SERIES OF TRANSACTIONS

39. Between January 1, 2005 and the present, Fiorito has made more than 800 DUI arrests. He made many of these arrests unlawfully as part of his scheme to deprive the citizens of Chicago of his honest services and as part of his scheme to deprive his gay arrestees of their equal protection under the law. Among the unlawful arrests and perjuries Fiorito conducted as part of this scheme were:

     i.   The false arrest of Kevin Pipkins by Fiorito for a DUI on February 2, 2003.

8

1. On October 1, 2003, after a bench trial, a judge ruled that the State failed to prove that Pipkins was even driving a car on February 2, 2003.
2. On August 7, 2004, Fiorito again arrested Pipkins for DUI, this time claiming that Pipkins committed a series of traffic violations over a distance of .84 miles.
3. Again, after a bench trial, a judge found Pipkins not guilty of DUI.

ii. The September 25, 2004 false arrest of non-Plaintiff Barry Schwartz.

1. On September 25, 2004, Barry Schwartz was pulled over by Defendant Fiorito as he left Little Jim's, a gay bar on North Halsted Street.
2. Fiorito claimed to have administered the Horizontal Gaze Nystagmus Test. He claimed that there was a "lack of smooth pursuit," "distinct nystagmus at maximum deviation," and "onset prior to 45 degrees (some white showing)" regarding both eyes. Fiorito claimed that Mr. Schwartz had "blood-shot eyes."
3. Barry A. Schwartz has a glass eye which could not have shown a nystagmus, nor could it have been red and blood-shot.

iii. The false arrest for DUI of Steven KOPP for DUI on February 21, 2005. For that stop,

1. Fiorito falsified police reports when he stated that KOPP, was fumbling documents, had a strong odor of alcohol, and spoke with slurred, mumbled, thick-tongued speech. KOPP was found not guilty after a bench trial.

iv. The false arrest for DUI of non-Plaintiff Bonnie Klein on May 15, 2005.

1. On May 15, 2005, Bonnie Klein was pulled over by Defendant Fiorito in front of the Closet, a lesbian bar on North Broadway.
2. When she exited her car, Fiorito began to ridicule her because her key chain was a "rainbow flag," which a symbol of gay pride.
3. Fiorito called Ms. Klein a "dyke" and made repeated references to the Closet, a lesbian bar on North Halsted Street.
4. Fiorito told Klein that her car was being towed for the suspended license plates and that she had to come to the police station with him.
5. Fiorito created false reports wherein he claimed that Klein had difficulty walking to the rear of her car and had to use her car for support. Eye witnesses indicate that Klein had no difficulty walking and did not use her car for support.

v. The false arrest for DUI of Catherine GILDEA on March 9, 2006.

1. While at the 23rd Police District, GILDEA requested a lawyer several times. Fiorito told GILDEA that he needed her to take another test without telling her what that test was. GILDEA refused the unidentified test and again told Fiorito she wanted a lawyer. Fiorito did not offer a breath test to GILDEA.

9

2.  At the conclusion of an April 4, 2006 hearing, the judge and ruled that Fiorito did not have reasonable grounds to arrest GILDEA for Driving Under the Influence of Alcohol and that he did not admonish her regarding the breath test, contrary to his in court testimony. The DUI charge against GILDEA is still pending, but is expected to be disposed in a manner indicative of GILDEA's innocence.

vi.  The false arrest for DUI of Joshua GOLDBERG on August 6, 2006.

1.  Goldberg was pulled over after completing his shift as a security guard, a job where he does not consume alcohol and is strictly forbidden to do so.
2.  Fiorito refused Goldberg's requests to take a breathalyzer test.
3.  All charges were dismissed against Goldberg on November 6, 2009 in a manner indicative of his innocence.

vii.  The false arrest for DUI of Darrel MITCHELL on October 15, 2006.

1.  Mitchell was arrested while standing next to his parked car which he had not been driving.  Both Mitchell and the driver made several attempts to explain to Fiorito that Mitchell was not the driver, but Fiorito arrested Mitchell for DUI and issued four other moving violations. Although not the driver, Mitchell agreed to take a breath test and scored .121
2.  The October 15, 2006, DUI charge against Mr. Mitchell is still pending, but is expected to be disposed of in a manner indicative of his innocence.

viii.  The false arrest of DUI of Rogelio CORRAL for DUI in December of 2006.

1.  Fiorito stated in his report that Corral was so drunk that he had to be carried; however, Corral had not consumed even one alcoholic beverage that night.
2.  Corral did have an unopened bottle of liquor in his car, which Fiorito opened and poured in his back seat.
3.  Corral was found not guilty on September 16, 2008.

ix.  The false arrest for DUI of Oscar FAEZELL on January 23, 2007.

1.  Oscar FAEZELL was driving Jimmy Connor's car because Connor had too much to drink. As FAEZELL was waiting to exit a parking lot near a gay nightclub called Circuit, Fiorito stopped his police car to allow FAEZELL to exit ahead of Fiorito. Fiorito followed FAEZELL approximately 2 miles from the parking lot to Belmont and Lake Shore Drive.
2.  At the Southbound Lake Shore Drive entrance ramp, Fiorito curbed the car FAEZELL was driving.  Fiorito testified at Mr. FAEZELL's trial, under oath, that he curbed the vehicle because a computer check of the license plate revealed that the registered owner had an outstanding warrant for his arrest.  Defendant Fiorito's testimony

was a lie. Jimmy Connor, the registered owner of the license plate, did not have an outstanding warrant on January 23, 2007.

3. FAEZELL did have an outstanding warrant. Fiorito took FAEZELL into custody and allowed the impaired Connor to drive his car. Fiorito completed a Tow Report for Mr. Connor's car despite the fact that the car was not towed. FAEZELL submitted to a breathalyzer test, which revealed a blood alcohol content that was under the legal limit of .08.

4. Fiorito committed perjury when testifying at both the hearing to rescind the statutory summary suspension of Oscar FAEZELL's driver's license and also at the trial for the DUI charge. FAEZELL was found not guilty of a DUI on May 14, 2008, after a bench trial.

x. The false arrest for DUI of Peter RENAULT in February of 2007.

1. Peter Renault was walking towards his car to double-check that he had parked legally when Fiorito arrested him.

2. Fiorito lied in his reports, stating that Renault had been weaving in and out of traffic and almost hitting parked cars when he was pulled over.

3. The charges against Renault will be resolved in a manner indicative of his innocence.

xi. The false arrest for DUI of Shawn RAUCH on April 17, 2007.

1. Defendant Fiorito, in his reports, claimed to have stopped Mr. RAUCH at 4:40 a.m. and arrested him at 4:44 a.m. Records from the Office of Emergency Management & Communication reveal that Defendant Fiorito was already transporting RAUCH to the 23rd Police District at 4:22 a.m.

2. When RAUCH told Fiorito he was coming from Hydrate, Fiorito responded by saying, "Oh, that fag joint."

3. RAUCH had a latino male passenger and had spilled sour cream on his shirt earlier that night.  Fiorito pointed to the stain and said, "Did your Puerto Rican boyfriend cum in your mouth?"

4. At the 23rd Police District, Defendant Fiorito used excessive force on RAUCH by grabbing him around the throat and shoving his head against the wall, while calling RAUCH a "faggot." The charges against RAUCH remain pending, but are expected to be disposed of in a manner indicative of his innocence.

xii. The false arrest for DUI of non-plaintiff Nicholas Panno on July 28, 2007. While being held in the 23rd Police District Interrogation room, Fiorito denied Panno's repeated pleas to use the washroom.

1. After finishing his paperwork, Fiorito led Panno into a hallway and instructed him to sit on a bench.  Panno told Fiorito that he had been sitting for hours and did not want to sit. In response, Fiorito struck Mr. Panno on the back of his right knee with his night stick, causing Panno's legs to buckle and causing severe bruising.

    2.  After several hours without access to a bathroom, Panno accidentally urinated on himself and the floor.  When Fiorito discovered what had happened, he said, "Now you pissed on my floor, now I have to clean you up."

    3.  Fiorito then left and later returned with a mop. Fiorito mopped up the urine on the floor and then shoved the dirty mop into Panno's crotch, dragging it onto his shirt, and finally his face.  Panno was handcuffed and leg-shackled in a seated position at this time. When finished, Fiorito said, "This is what you get when you can't control yourself.  Now you don't need to go to the bathroom, do you?" Fiorito purposefully denied Panno access to the bathroom until he urinated on himself so that Fiorito would have more evidence to support that Panno was intoxicated that evening.

xiii.  The false arrest for DUI of Todd SWINGLEY on August 5, 2007.

    1.  As part of his attempts to make it appear that he did comply with CPD procedures, Defendant Fiorito falsely testified at a jury trial on February 18, 2009 that he conducted a twenty-two minute investigation of a possible DUI at the scene, which included the field performance tests.

    2.  Records from the Office of Emergency Management & Communication show that Defendant Fiorito was actually only at the scene for thirteen minutes.

    3.  SWINGLEY was found not guilty by a jury of his peers on February 18, 2009, indicative of his innocence.

xiv.  The false arrest for DUI of James DEAN on October 1, 2007.

    1.  The arrest occurred outside the 23rd Chicago Police District, only four (4) minutes after DEAN was released from custody on unrelated traffic offenses.  DEAN had been in police custody for the previous hour and a half when Fiorito ordered him to move his car, which was still parked in front of the station. DEAN told Fiorito twice that he could not drive because his license was suspended.

    2.  When DEAN attempted to show Fiorito the bond slip proving that DEAN was released from custody four minutes earlier, Fiorito replied, "get in your fucking car and move it."  When DEAN complied with this order, Fiorito activated his emergency equipment and arrested DEAN for a DUI, and issued seven additional traffic violations.

    3.  On August 6, 2008, Fiorito committed perjury when he testified at the hearing to rescind the Statutory Summary Suspension. At the end of the hearing, the Court ruled that Fiorito did not have reasonable grounds to arrest DEAN for DUI and that he did not admonish him regarding the breath test. The DUI was dismissed in a manner indicative of DEAN's innocence.

xv.  The second false arrest for DUI of Darrell MITCHELL on October 14, 2007 (Fiorito arrested Mitchell for DUI on October 15, 2006).

1. MITCHELL was approached by Fiorito while he was seated behind the wheel of his vehicle in a gas station on North Halsted.
2. As he approached, Fiorito said to Mitchell, "Oh, it's you again," and arrested him for DUI and six other moving violations. This time, Mitchell was the driver, but he had not been drinking.
3. The October 14, 2007, DUI charge is still pending, but is expected to be disposed of in a manner indicative of his innocence.

xvi.   The false arrest of Julie MATT on November 19, 2007.

1. At approximately 2:00 a.m., MATT and a friend walked out of the Wild Hare nightclub on North Clark Street, and saw Fiorito parked in a squad car across the street. MATT only drove for a short distance before Fiorito activated his emergency equipment and pulled her over. Fiorito falsely accused MATT of driving without headlights and told her he needed to draw her blood.
2. When MATT told Defendant Fiorito that he could not draw her blood, but that she would submit to a breath test, Defendant Fiorito arrested her and transported her to the 23rd Police District. MATT, a 51 year old mother of three, does not drink and had not consumed any amount of an alcoholic beverage that night. MATT asked three to four times for the opportunity to take a Breathalyzer test but was told by Fiorito, "I've already given you the opportunity."
3. The DUI charge against Ms. MATT is still pending, but is expected to be disposed of in a manner indicative of her innocence.

xvii.   The false arrest for DUI of Adam GARVEY on December 7, 2007.

1. GARVEY was traveling Northbound on North Clark Street, when he was pulled over by Fiorito. Fiorito falsely accused GARVEY of failing to keep in lanes and failing to stop at a stop sign. GARVEY was not asked to submit any breath or chemical testing.
2. On March 10, 2009, Fiorito committed perjury when he testified at the hearing to rescind the Statutory Summary Suspension of GARVEY.  At the conclusion of the hearing, the judge ruled that Fiorito did not have reasonable grounds to arrest GARVEY for DUI and that he, contrary to his testimony, had not admonished GARVEY regarding a breath test.
3. The DUI charge against GARVEY is still pending, but is expected to be disposed of in a manner indicative of his innocence.

xviii.   The false arrest for DUI of Brittany SUMMERFORD on December 16, 2007.

1. Defendant Fiorito stopped SUMMERFORD just after she paused briefly in front of the Closet, a lesbian bar on North Broadway, to say hello to a friend.
2. During his investigation and processing, Fiorito made at least four references to the Closet.
3. During transport from the 23rd Police District to the 19th Police District, the transport officer told Ms. SUMMERFORD, "you don't

even smell like alcohol, I shouldn't even be doing this." And went on to say "you should get a lawyer."

4.  An entry in the arrest report made by the lock-up keeper at the 19th District indicates that SUMMERFORD "seemed to be fine, was speaking clearly and was coherent."

5.  The charges against Brittany SUMMERFORD are still pending, but are expected to be disposed of in a manner indicative of her innocence.

xix.  The false arrest for DUI of Jonathan ARELLANO on January 2, 2008.

1.  Fiorito stopped Arrellano on Halsted after he had picked up two friends from Hydrate, a local gay bar.

2.  Arrellano was not intoxicated that evening; however, Fiorito lied on his report, stating that Arrellano had urinated himself due to intoxication.

3.  The charges against Arellano will be resolved in a manner indicative of his innocence.

xx.  The false arrest for DUI of Steve DERRY in January, 2008, when he was leaving North End.

1.  Derry saw Fiorito driving in a marked police car as he left the North End, a gay bar on North Halsted Street.  After waiting for Fiorito to pass, DERRY drove to the IHOP, parked, and entered the restaurant.  After eating a full breakfast, DERRY got into his car and started driving again.

2.  Fiorito swore under oath that he was looking at Mr. DERRY in his rear view mirror and observed that he was intoxicated and that he did not have his headlights on.  Fiorito's testimony was a lie.

3.  DERRY was driving a 1990 Land Rover.  The headlights for a 1990 Land Rover turn on automatically. At the 23rd District, DERRY overheard Defendant Fiorito tell another officer that he "caught this fag coming out of the bar."

4.  The DUI charge against Mr. DERRY is still pending, but is expected to be disposed of in a manner indicative of his innocence.

xxi.  The false arrest for DUI of Steven LOPEZ on February 16, 2008.

1.  Fiorito swore under oath that he pulled Mr. LOPEZ over for his headlights being off after sunset.  Defendant Fiorito's testimony was a lie. LOPEZ was driving his 2003 Yukon Denali, which has automatic headlights.

2.  LOPEZ attempted to correctly blow into a Breathalyzer three times. After his third failed attempt, Defendant Fiorito said, "Fuck it, I'm putting you down as a refusal." Fiorito testified under oath that while driving, LOPEZ was swerving and playing loud music. Defendant Fiorito's testimony was a lie.

3.  The charges against LOPEZ are still pending, but are expected to be disposed of in a manner indicative of his innocence.

xxii.  The false arrest for DUI of Andrew KEIRCUL on May 1, 2008.

1. At the 23rd Police District, Keircul indicated to Fiorito that he wanted to take a breathalyzer test. On Keircul's first attempt to complete the breathalyzer test, the breathalyzer indicated an insufficient breath sample. Fiorito hit Mr. Keircul on the back of the head with his hand, forcing Keircul's lip to strike the mouthpiece of the breathalyzer, which split Keircul's lip open.
2. With blood in his mouth, Keircul attempted to blow into the machine a second time. When the breathalyzer indicated for a second time an insufficient breath sample, Fiorito punched Mr. Keircul in the stomach.
3. The charges against Andrew Keircul remain pending, but are expected to be disposed of in a manner indicative of his innocence.

xxiii.   The false arrest of Kevin STEPP in May of 2008.
1. Stepp was pulled over just after dropping a friend off in front of a gay bar, 'Sidetracks.'  Fiorito pulled him over without cause and asked Stepp where he was coming from.  Stepp said, "Sidetrack," to which Fiorito said, "isn't that a fag bar,  are you a faggot?"
2. Stepp attempted to blow into the breathalyzer but he had a panic attack and was not able to blow.  Fiorito then said "ok that's it, put him in jail."
3. The charges against Stepp will be resolved in a manner indicative of his innocence.

xxiv.   The false arrest for DUI of Jesse LEVIN in June, 2008.
1. LEVIN was pulling-out from where he was parallel parked when he rear-ended a squad car. Fiorito arrived at the scene and immediately arrested Mr. LEVIN for a DUI without performing any field performance tests.
2. After he was transported to the 23rd Police District, Mr. LEVIN asked Fiorito if he could submit to a breathalyzer test.  Fiorito refused his request. Fiorito then handcuffed each of LEVIN's arms, separately, to bars and handcuffed his legs.  Fiorito then instructed LEVIN to take off his shoes. LEVIN kicked off his shoes, which landed somewhere near Fiorito, but did not come close to hitting him.
3. In response, Fiorito said "you trying to kick me, mother-fucker" and slapped LEVIN with his open hand. Fiorito then punched LEVIN in the forehead with the butt of the palm of his right hand, slamming LEVIN's head into the cinder-block behind him. The DUI charge against Mr. LEVIN is still pending, but is expected to be disposed of in a manner indicative of his innocence.

xxv.   The false arrest for DUI of David SIEBERT on June, 27, 2008.
1. Seibert was traveling northbound on North Broadway Avenue, when he was pulled over by Fiorito. Fiorito falsely accused Seibert of speeding, failing to use his turn signal, failing to keep in lanes and negligent driving.

2. On May 5, 2009, Fiorito committed perjury when he testified at a bench trial regarding all traffic violations, field performance tests and observations of Seibert. After a bench trial, Seibert was found not guilty of DUI.

xxvi. The false arrest of non-Plaintiff Zuriel Padilla for DUI on July 15, 2008.

1. Padilla had contact with another Chicago Police Officer approximately twenty minutes prior to his contact with Fiorito. That other officer did not believe that Padilla was under the influence of alcohol.

2. Fiorito told Padilla, whose leg is amputated from the knee down, that "at least they didn't cut off your dick, so you can still fuck."

xxvii. The false arrest of Tony LONG for DUI on August 10, 2008.

1. Fiorito fabricated several traffic offenses including "swerving," "no seat-belt" and "loud music."

2. During the course of the arrest and processing, Fiorito ridiculed and harassed him regarding his appearance.

3. Fiorito refused to allow Long to use the bathroom.

4. The charges against Long will be resolved in a manner indicative of his innocence.

xxviii. The false arrest of non-Plaintiff Danielle Harder on September 17, 2008.

1. Fiorito refused Harder's repeated attempts to use the washroom and told her "to pee on herself."

xxix. The false arrest of Gerson PINEDO in October of 2008.

1. Pinedo, who owns a restaurant, was pulled over after closing up for the night. He had not been drinking.

2. Fiorito failed to administer any field performance tests or breathalyzer.

3. The charges against Pinedo will be resolved in a manner indicative of his innocence.

xxx. The false arrest of Douglas DeRHODES on October 21, 2008.

1. DeRhodes blew .049.

2. Fiorito refused to allow DeRhodes to use the restroom. Finally, another officer at the station granted his request.

3. During the course of his arrest, Fiorito locked DeRhodes's cell phone and wallet in his car.

4. On July 9, 2009, Judge Christina Ryan granted DeRhodes's Motion to Quash Arrest and Suppress Evidence.

5. The charges against DeRhodes will be resolved in a manner indicative of his innocence.

xxxi. The false arrest for DUI of Lex LEAKS on October 23, 2008.

1. Leaks was pulled over on North Halsted Street by and approximately six police officers, including Fiorito.

2. Leaks performed field sobriety tests, was told he passed and sent on his way. When the other officers had cleared the area, Fiorito followed Leaks, pulled him over again, and arrested him for DUI.

16

3.  While at the 23rd District Station, Fiorito called Leaks a "fag," "black," and "poor."  Leak's belongings were taken during processing at the 23rd Police District, but were never returned.

4.  On December 29, 2008, Judge Burke ruled that Fiorito had not reasonable grounds to arrest Leaks for DUI.

xxxii.   The false arrest of Stacie HUDGENS on January 9, 2009.

1.  Hudgens is completely deaf in her left ear, which is the ear closest to the driver's side window, and has lost most of her hearing in her right ear.

2.  Hudgens repeatedly told Defendant Fiorito that he must look at her when speaking in order for her to understand him. Fiorito failed to comply with CPD procedures by, among other things, deliberately and repeatedly turning his head away from Hudgens.

3.  Fiorito did this to ensure that she would not understand his instructions. Performance tests are designed to test the ability to follow instructions while completing basic coordination tasks.

4.  Fiorito ensured that Hudgens would perform poorly by preventing her from reading his lips. Upon arrest, Hudgens requested a sign interpreter.  Defendant Fiorito laughed in response and said, "You're talking just fine." Hudgens was never offered a breathalyzer test or admonished regarding refusing to take the test.

5.  An entry in the arrest report made by the lock-up keeper at the 19th District indicates that Ms. Hudgens was not under the influence of alcohol or drugs and did not smell of alcohol.

6.  The charges against Hudgens are still pending, but are expected to be disposed of in a manner indicative of her innocence.

xxxiii.   The false arrest for DUI of Jerry CHICK in February of 2009.

1.  Fiorito pulled Chick over in a McDonald's parking lot and falsely accused him of several moving offenses including speeding and driving recklessly.

2.  Chick took a breathalyzer and blew .04, which is well under the legal limit of .08.

3.  Chick performed field sobriety tests without any problems.

4.  The charges against Chick will be resolved in a manner indicative of his innocence.

xxxiv.   The false arrest for DUI of Ryan NILSON as he left the Green Mill at approximately 1:00 am on February 7, 2009.

1.  Fiorito asked Nilson to produce his driver's license and insurance, and he complied.  Fiorito proceeded to crack and/or break Nilson's driver's license, informing him that his driver's license was invalid. Fiorito testified under oath that no other officers were involved with the field performance tests.  Fiorito's testimony was a lie.

2.  Fiorito informed Nilson that he had satisfactorily completed all of the tests and that he was not under arrest, but then took Nilson's cell

17

phone and placed him in the back of the squad car.  Fiorito did not place Nilson into handcuffs.

3. Fiorito thoroughly searched Nilson's car. Fiorito did not have permission, probable cause, or a warrant to search Nilson's car. Fiorito found marijuana in Nilson's car.  Fiorito informed Nilson that he was "going in" for a DUI. Fiorito never asked Nilson if he would submit to a breathalyzer or blood test. Fiorito falsely accused Nilson of failing to keep in lanes, driving too slowly, no driver's license, and negligent driving.

4. On March 26, 2009, Fiorito committed perjury when he testified at the hearing to rescind the Statutory Summary Suspension regarding all traffic violations, field performance tests and observations of Nilson. At the end of the hearing, the judge ruled that Defendant Fiorito did not have reasonable grounds to arrest Nilson for DUI.

5. On November 6, 2009, all charges were dismissed in a manner indicative of innocence.

xxxv.   The false arrest for DUI of Joseph SMITH on February 22, 2009.

1. SMITH was legally parked and sitting in his car on North Clark Street in front of the Wild Hare nightclub when Fiorito approached and knocked on SMITH's window.

2. Fiorito falsely accused SMITH of leaving the scene of an accident, failing to keep in lanes, failing to stop at a stop sign, driving left of center, and possession of drug paraphernalia.

3. The DUI charge against SMITH is still pending, but is expected to be disposed of in a manner indicative of his innocence.

xxxvi.   The false arrest of John BARRET on March 5, 2009.

1. Fiorito asked Barrett to take a breathalyzer test at the scene of the field performance tests.   When Barrett asked if he could instead take the breathalyzer test at the station, Fiorito called it a refusal. Barrett stated, for a second time, that he would submit to the test at the police station, but Defendant Fiorito again called this a refusal.

2. After arriving at the 23rd District police station, Barrett asked approximately four times when he could take the breathalyzer test. Fiorito said, "When I asked you to blow at the scene, you gave up your right to blow." Barrett then said, "If I don't get to blow, you're gonna have a hard time getting this to hold up in court." Fiorito responded by saying, "I don't care if this holds up or not.  I get your $1160.  I get to go to court and we get your court costs no matter what." Fiorito also asked Barrett if his diamond watch was real, and then said, "It would be a shame if it happened to get lost."

3. The person taking Barrett's fingerprints at the 19th District said, "He arrested you for a DUI?  You look fine to me." While Barrett was being transported from the 23rd District to the 19th District, the transport officer asked if he was "ok" and stated that Fiorito is a "prick." The transport officer also said, "Ask around about Fiorito.

18

You can get off this." He told Barrett that "Fiorito is an overtime whore."

4. The charges against Barrett are still pending, but are expected to be disposed of in a manner indicative of his innocence.

xxxvii. The false arrest for DUI of Cynthia CARRASCO on March 18, 2009
1. Fiorito stopped Carrasco at Halsted and Roscoe.
2. Carrasco refused all field performance tests.
3. The charges against Carrasco will be resolved in a manner indicative of her innocence.

xxxviii. The second false arrest of Steve KOPP on March 31, 2009.
1. Fiorito falsely accused KOPP of failing to wear his seatbelt, reckless driving, and obstructing the flow of traffic. Fiorito falsified police reports when he stated that KOPP was driving recklessly, had a strong odor of alcohol, had blood-shot eyes, and spoke with slurred, mumbled, thick-tongued speech.
2. Fiorito recognized KOPP from his 2005 arrest of KOPP.
3. The DUI charge against KOPP is still pending, but is expected to be disposed of in a manner indicative of his innocence.

xxxix. The false arrest of Corinthiaus TIBBS on May 21, 2009.
1. Fiorito falsely accused Tibbs of failing to stay in lanes and swerving.
2. Fiorito destroyed the video evidence of the alleged 'bad driving' and of the performance tests.
3. Throughout the arrest and at the station, Fiorito cursed and used racial slurs towards Tibbs and his girlfriend.
4. The charges against Tibbs will be resolved in a manner indicative of his innocence.

xl. The false arrest of Christopher QUINN on June 13, 2009.
1. Quinn was stopped by Fiorito while looking for parking near Irving Park and Kenmore streets.
2. In Fiorito's report, he states that Quinn was slowing and stopping for no reason and then speeding up for no reason. As shown clearly on the dash video, however, Quinn was merely slowing down while going over speed-bumps. Fiorito claimed Quinn swerved and almost hit multiple parked cars; the video shows Quinn did not swerve and did not almost strike any parked cars.
3. On October 29, 2009, the State agreed to rescind the Statutory Summary Suspension.
4. On October 29, 2009, all charges against Quinn were dismissed in a manner indicative of his innocence.

xli. The false arrest of David LOZADA for DUI on June 16, 2009.
1. On the night of his arrest, Lozada had been the victim of a hit and run on Lakeshore drive.

2. Fiorito arrived at the scene and immediately placed Lozada under arrest.  Fiorito conducted no field sobriety tests yet wrote on his reports that Lozada could not complete the tests.
3. Lozada had no alcohol on June 16, 2009.
4. Fiorito called Lazoda a "fag."
5. Fiorito arrested Lozada three years earlier.
6. On September 1, 2009, Judge Thomas Lyons rescinded the Statutory Summary Suspension.
7. The charges against Lozada will be resolved in a manner indicative of innocence.

xlii.  The false arrest for DUI of Michael VAUGHN on June 21, 2009.

1. Vaughn was parked in a parking lot at the lake-front with his girlfriend.
2. Video evidence shows a small amount of cannabis was recovered from Vaughn's girlfriend; Fiorito charged Vaughn with Possession of Cannibis.
3. Video evidence shows Vaughn pass all performance tests; Fiorito claims Vaughn "staggered," "lost his balance," "uses arms to balance."
4. On October 29, 2009, the Summary Suspension was rescinded.
5. The charges against Vaughn will be resolved in a manner indicative of innocence.

xliii.  The false arrest for DUI of Eric PERINO on August 4, 2009.

1. Fiorito falsely accused Perino of tailgating a taxi for .63 miles; video evidence shows the taxi and Perino going different directions after .13 miles.
2. Fiorito claims Perino "staggered," "lost his balance," "uses arms to balance" during the field performance tests; video evidence shows Perino did none of those things.
3. The charges against Perino will be resolved in a manner indicative of innocence.

## CONTINUING TORT

40. In each of these cases, following the false arrests Defendant Fiorito attended multiple court dates, both earning overtime pay and perjuring himself during the course of summary suspension hearings, motions to suppress, and/or trials.  Fiorito's conduct was extreme and outrageous in that he lied numerous times both to prosecutors and under oath in Court.

41. Every time Fiorito lied and perjured himself he caused extreme emotional distress to the particular Plaintiff that was facing jail time for an offense that they did not commit.

20

## COUNT I
## CIVIL RICO VIOLATION

42. Plaintiffs restate and reallege all previously plead paragraphs.

43. This cause of action is brought pursuant to 18 U.S.C. § 1962(b), (c) and (d).  A
    racketeering ("RICO") action may be brought by a Plaintiff injured because of the conduct
    of an enterprise engaging in a pattern of racketeering activity.  18 U.S.C. § 1964(c).

44. At all times material to this Complaint, Defendant Fiorito and his uncomplained-of co-
    conspirators, Officer J. Hazard and other assisting arresting officers, constituted an
    "enterprise" as that term is defined in 18 U.S.C. § 1962 (b), (c), and (d).

45. The purpose of the enterprise was to allow Defendant Fiorito to unlawfully collect
    excessive overtime payments from the City of Chicago and to harass and abuse gays and
    lesbians.

46. In engaging in this racketeering, Defendant Fiorito committed multiple predicate offenses
    that violated Illinois and federal law, which constitute predicate offenses under the RICO
    statute, including, but not limited to: 1) perjury; 2) obstruction of justice; 3) false
    imprisonment; 4) mail fraud; 5) wire fraud; and 6) fraud in the form of deprivation of
    honest services by a public official.

47. Officer Hazard and other assisting arresting officers aided and abetted Defendant Fiorito in
    committing the preceding predicate offenses.

48. The enterprise was engaged in, and the activities of which affected, interstate and foreign
    commerce, including but not limited to the use of both electronic communication and
    United States mail to communicate false information to out-of-state governments.  On

information and belief, Defendant Fiorito used some of the unlawfully obtained excessive overtime pay to make investments and deposits into federally insured instruments.

49. All of the Plaintiffs in the instant Complaint were directly injured by Defendant Fiorito's racketeering activity in that they were the victims of Fiorito's predicate crimes.

50. Under the statute, all Plaintiffs are entitled to treble damages.

51. As a further direct, foreseeable, and proximate result of Fiorito's wrongful acts by Defendants, Plaintiffs have incurred attorneys' fees in an amount to be determined, for which Plaintiffs claim a sum to be established according to proof.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and that they be awarded treble their compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT II
### *MONELL* CLAIM

52. Plaintiffs restate and reallege all previously plead paragraphs.

53. The actions of Fiorito as alleged above and below were done pursuant to one or more *de facto* policies, practices and/or customs of the City of Chicago, Chicago Police Department, the Independent Police Review Authority, and the CPD's Internal Affairs Division.

54. Among the *de facto* policies of the municipality and its agents were:

    a. The failure to properly investigation allegations of police misconduct or abuse of the overtime system.
    b. The failure to have a system which monitors patterns of alleged abuse of the overtime system.
    c.  The failure to properly discipline officers that abuse the overtime system.
    d. The failure to properly discipline officers that make false arrests.
    e. The failure to properly discipline officers that engage in profiling.

f.   The failure to properly maintain records of police misconduct and allegations of police misconduct, including abuse of the overtime system and false arrest.

g.   The failure to properly hire, train, monitor, and/or supervise officers.

h.   A *de facto* policy, practice, and custom of the police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the false arrest of individuals for the purpose of increasing overtime pay, despite their obligation under Department regulations to do so. This conduct included police officers who remained silent or gave false or misleading information during official investigations in order to protect themselves or fellow officers from internal discipline or retaliation, civil liability, or criminal prosecution.

i.   The act of filing excessive Driving Under the Influence (DUI) charges for the purpose of increasing their individual compensation.

j.   The failure to properly verify the validity of DUI charges.

k.   The failure to properly train officers on sexual-orientation sensitivity and to properly ensure that officers do not have animus towards citizens based on their sexual orientation.

55. The aforementioned policies, practices, and customs have been maintained and/or implemented with deliberate indifference by the Defendant City of Chicago and have encouraged Defendant Fiorito to commit the aforesaid wrongful acts against Plaintiffs, and therefore was a direct and proximate cause of the complained of Constitutional and other legal violations.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT III
## INDEMNITY 745 ILCS 10/9-102

56. Plaintiffs restate and reallege all previously plead paragraphs.

57. Defendant Chicago is the employer of Defendant Fiorito.

58. Defendant Fiorito committed the acts alleged above under color of law and in the scope of employment as an employee of the City of Chicago.

23

WHEREFORE, should Defendant Officer Fiorito be found liable on one or more of the claims set forth above, Plaintiffs demand that, pursuant to 745 ILCS 10/9-102, the Defendant City be found liable for any compensatory judgment Plaintiffs obtain against said Defendant, as well as attorneys' fees and costs awarded.

## COUNT IV
## FALSE ARREST - 42 U.S.C. § 1983

59. All previously plead paragraphs are restated and realleged herein.

60. Fiorito knowingly arrested Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Faezell, Keircul, Lopez, Matt, Garvey, Kopp, Seibert, Smith, Derry, Nilson, Levin, Mitchell, Carrasco, Corral, DeRhodes, Leaks, Lozada, Pinedo, Quinn, Renault, Chick, and Stepp.

61. These arrests were made without probable cause or other justification.

62. These arrests were made under color of law and within the scope of Fiorito's employment.

WHEREFORE, Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Faezell, Keircul, Lopez, Matt, Garvey, Kopp, Seibert, Smith, Derry, Nilson, Levin, Mitchell, Carrasco, Corral, DeRhodes, Leaks, Lozada, Pinedo, Quinn, Renault, Chick, and Stepp demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT V
## EQUAL PROTECTION BASED ON SEXUAL ORIENTATION- 42 U.S.C. § 1983

63. Fiorito realleges and reincorporates all previous paragraphs.

64. Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

65. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny any person the equal protection of the laws.

66. Defendant Fiorito's actions as alleged herein were motivated by anti-gay animus. Prior to and during the actions alleged herein, Defendant Fiorito repeatedly subjected Plaintiffs to anti-gay rhetoric and various anti-gay derogatory comments.

67. Defendant Fiorito was acting "under color of state law."

68. Defendant Fiorito purposefully singled out Plaintiffs for unequal treatment based on their perceived or actual sexual orientation.

69. Defendant Fiorito's actions did not serve any sufficient, legitimate government interest.

70. As a result of Defendant Officer's denial of equal protection, Plaintiffs sustained injuries.

71. Defendant Fiorito deprived Plaintiffs of the equal protection of the laws in violation of Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution. Defendant Fiorito is, therefore, liable to Plaintiffs under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Faezell, Garvey, Kopp, Derry, Nilson, Arrellano, Stepp, Long, Leaks, Tibbs, and Lozada demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT VI
## EQUAL PROTECTION BASED ON RACE- 42 U.S.C. § 1983

72. Fiorito realleges and reincorporates all previous paragraphs.

73. Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

74. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny any person the equal protection of the laws.

75. Defendant Fiorito's actions as alleged herein were motivated by racial animus.  Prior to and during the actions as alleged herein, Defendant Fiorito repeatedly subjected Plaintiffs to racially derogatory comments.

76. Defendant Fiorito was acting "under color of state law."

77. Defendant Fiorito purposefully singled out Plaintiffs for unequal treatment based on their race.

78. Defendant Fiorito's actions do not serve any sufficient, legitimate government interest.

79. As a result of Defendant Officer's denial of equal protection, Plaintiffs sustained injuries.

80. Defendant Fiorito deprived Plaintiffs of the equal protection of the laws in violation of Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution.  Defendant Fiorito is, therefore, liable to Plaintiffs under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs Carrasco, Tibbs, Vaughn, Faezell, Leaks, Dean, Lozada, Arrellano, and Pinedo demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

### COUNT VII
### MALICIOUS PROSECUTION

81. All previously plead paragraphs are restated and realleged herein.

82. By the actions detailed above, Fiorito commenced legal proceedings against the Plaintiffs.

83. Those proceedings were terminated in the Plaintiffs' favor in a manner indicative of their innocence.

84. There was absence of probable cause for each such proceeding.

85. Fiorito initiated those proceedings with malice.

86. As a proximate result of the above actions, Plaintiffs were injured.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT VIII
## INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS

87. All previously plead paragraphs are restated and realleged herein.

88. The above-detailed conduct by Defendant Fiorito was extreme and outrageous, exceeding all bounds of human decency.

89. Fiorito's continuous lying and perjury were performed, in part, with the intent of, or knowledge that they were likely to inflict severe emotional distress on Plaintiffs.

90. As a direct and proximate result of this conduct, Plaintiffs did, in fact, suffer severe emotional distress.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and that they be awarded compensatory damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT IX
## EXCESSIVE FORCE - 42 U.S.C. § 1983

91. All previously plead paragraphs are restated and realleged herein.

92. The actions of Defendant Fiorito constituted unreasonable, unjustifiable, and excessive force against Plaintiffs Rauch, Keircul, and Levin, thus violating their rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

93. As a proximate result of the above-detailed actions of Defendant Fiorito, Plaintiffs Rauch, Keircul, and Levin were injured.

94. Defendant Fiorito acted under color of law and within the scope of his employment.

WHEREFORE, Plaintiffs Rauch, Keircul and Levin demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT X
## FALSE IMPRISONMENT

95. All previously plead paragraphs are restated and realleged herein.

96. Defendant Fiorito arrested the Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Faezell, Keircul, Lopez, Matt, Garvey, Kopp, Seibert, Smith, Derry, Nilson, Levin, Mitchell, Carrasco, Corral, DeRhodes, Leaks, Lozada, Pinedo, Quinn, Renault, Chick, and Stepp.

97. Defendant Fiorito made these arrests without reasonable grounds to believe that an offense had been committed.

98. Defendant Fiorito's conduct in committing these acts was willful, wanton, and without regard for the constitutional rights of the Plaintiffs.

WHEREFORE, Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Faezell, Keircul, Lopez, Matt, Garvey, Kopp, Seibert, Smith, Derry, Nilson, Levin, Mitchell, Carrasco, Corral,

DeRhodes, Leaks, Lozada, Pinedo, Quinn, Renault, Chick, and Stepp demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

**COUNT XI**
**CIVIL CONSPIRACY**

99. All previously plead paragraphs are restated and realleged herein.

100. Defendant Fiorito had an agreement with Officer Hazard and other unknown officers for the purpose of engaging in a concerted effort to violate Plaintiffs' rights guaranteed by the United States Constitution.

101. This civil conspiracy began in or about 2003 and continued until November, 2009.

102. In furtherance of this conspiracy, Defendant Fiorito committed overt tortious and/or unlawful acts, including the acts described above.

WHEREFORE, Plaintiffs demand judgment be entered in their favor and that they be awarded compensatory and punitive damages, reasonable attorneys' fees, costs and expenses and such other and further relief that this Honorable Court deems just.

PLAINTIFFS DEMAND TRIAL BY JURY.

Respectfully Submitted,


PLAINTIFFS JAMES DEAN, JR., CATHERINE GILDEA, TODD, SWINGLEY, SHAWN RAUCH, STACIE HUDGENS, STEVE LOPEZ, OSCAR FAEZELL, ANDREW KEIRCUL, JON BARRET, JULIE MATT, BRITTANY SUMMERFORD, ADAM GARVEY, DAVID SIEBERT, JOSEPH SMITH, STEVE DERRY, RYAN NILSON, JESSE LEVIN, STEVE KOPP, DARRELL MITCHELL, JONATHAN ARELLANO, CYNTHIA CARRASCO, ROGELIO CORRAL, DOUGLAS DERHODES, JOSHUA GOLDBERG, LEX LEAKS, TONY LONG, DAVID LOZADA, ERIC PERINO, GERSON PINEDO, CHRISTOPHER QUINN, PETER RENAULT, KEVIN STEPP, CORINTHIAUS TIBBS, JERRY CHICK, AND MICHAEL VAUGHN,

By One of THEIR Attorneys:


  s/ Jon F. Erickson
Jon F. Erickson

Civil Rights Center, LLC
4554 N. Broadway, Suite 325
Chicago, IL 60640
(773) 907-0940