IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES DEAN, JR., CATHERINE GILDEA, TODD SWINGLEY, SHAWN RAUCH, STACIE HUDGENS, STEVE LOPEZ, OSCAR FAEZELL, ANDREW KEIRCUL, JON BARRETT, JULIE MATT, BRITTANY SUMMERFORD, ADAM GARVEY, DAVID SIEBERT, JOSEPH SMITH, STEVE DERRY, RYAN NILSON, JESSE LEVIN, STEVE KOPP, AND DARRELL MITCHELL, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, and CHICAGO POLICE OFFICER R. FIORITO, Star #11624, <br> Defendants. | No. 09 CV 1190 <br><br> Honorable Judge Kennelly <br><br> Magistrate Judge Nolan |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

NOW COMES the Defendant, CHICAGO POLICE OFFICER R. FIORITO, Star #11624, by and through his attorneys, Querrey & Harrow, Ltd., and for his Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, states as follows:

### INTRODUCTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiffs' rights under the Constitution of the United States.

**Answer:**     Defendant Officer Fiorito admits this is brought pursuant to Section 1983, but denies that there were any deprivations to plaintiffs' rights.

## JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985; the judicial code 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

**Answer:**      Defendant Officer Fiorito admits the allegations contained in paragraph 2.

## PARTIES

3.      Plaintiffs are all residents of the Northern District of Illinois and are all United States citizens.

**Answer:**      Defendant Officer Fiorito lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4.      Defendant Officer Fiorito is a present employee and agent of the Chicago Police Department. At all times relevant, Defendant Fiorito acted under color of law as a duly appointed Chicago Police Officer and within the scope of his employment.

**Answer:**      Defendant Officer Fiorito admits the allegations contained in paragraph 4.

5.      Defendant City is a municipal corporation organized under the laws of the State of Illinois. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby. It was or is the employer of the Defendant Fiorito.

**Answer:**      Defendant Officer Fiorito admits the allegations contained in paragraph 5, but denies there were any injuries.

## BACKGROUND FACTS

6.      Over at least the last six years, Defendant Fiorito has engaged in a continuing course of conduct, in part motivated by both pecuniary gain and anti-gay animus.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph 6.

7.      This course of conduct includes stopping unimpaired drivers without probable cause, and charging them with Driving Under the Influence ("DUI"), and many other charges.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph 7.

8.      Defendant Fiorito works the midnight shift at the 23rd Police District.

**Answer:**      Defendant Officer Fiorito admits the allegations contained in paragraph 8.

9.      Defendant Fiorito has made hundreds of DUI arrests per year during his employ with the Chicago Police Department.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph 9 as stated.

10.     Police Officers that are regularly scheduled to work during court hours do not necessarily receive overtime for court appearances.

**Answer:**      Defendant Officer Fiorito admits the allegations contained in paragraph 10.

11.     Officers that are regularly scheduled to work the midnight shift almost always receive overtime for court appearances as this is work outside of their regularly scheduled hours.

**Answer:** Defendant Officer Fiorito admits that there is no regularly scheduled court during his shift, but denies the remainder of the paragraph 11 as stated.

12.   Defendant Fiorito has engaged in a course of conduct to ensure as many court appearances as possible in order to obtain as much overtime pay as possible. In fact, Defendant Fiorito is in court every day of the week either at the Daley Center or at 26th Street.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 12.

13.   As part of this course of conduct, Defendant Fiorito administers the Standardized Field Performance Tests to all of his arrestees in non-compliance with Chicago Police Department and National Highway Traffic Safety Administration procedures and then falsifies police reports and testimony to indicate that he did comply with the procedures.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 13.

14.   As part of this course of conduct, Defendant Fiorito prevents his arrestees from taking a breath or blood test by trickery, failing to offer such tests or by falsely attributing a refusal.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 14.

15.   As part of this course of conduct, Defendant Fiorito creates false police reports and provides false testimony at hearings and trials for DUIs.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 15.

16.     As a matter of routine, Defendant Fiorito falsely testifies in police reports that drivers, including all of the Plaintiffs, were "staggering," and/or "cannot keep their balance," "cannot perform tests," demonstrate nystagmus," "have a strong odor of alcohol," have "red, blood-shot eyes," were "combative" and spoke with "slurred, mumbled, thick-tongued speech."

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 16.

17.     Fiorito routinely testifies falsely in police reports and in court that drivers fail to stay in lanes, swerve, speed, drive without headlights, "almost strike parked cars," and fail to wear seatbelts.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 17.

18.     As part of this course of conduct, Fiorito falsely testifies in police reports and in court that his arrestees uniformly failed all field sobriety tests.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 18.

19.     The similarities between all of Defendant Fiorito's police reports are not coincidence, but are rather a purposeful repetition of language necessary to sustain probable cause and conviction.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 19.

20.     Defendant Fiorito routinely demonstrates his anti-gay animus with language such as "fag," "faggot," and "dyke."

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 20.

*THE PATTERN AND PRACTICE*

21. The continuing course of conduct described above and below constitutes a pattern and practice, with the quiet approval of unknown and un-complained-of supervising officers, as well as the express cooperation of at least two named colleagues, to obtain financial gain through the unlawful arrests and malicious prosecutions of innocent drivers located near gay and lesbian bars in the "boystown" community.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 21.

22. This pattern and practice constitutes a single series of transactions.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 22.

23. Fiorito took advantage of a unique set of circumstances in order to ensure great financial gain as payment for his ability to express his anti-gay animus.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 23.

24. As a midnight officer, Fiorito is paid overtime every time he goes to court, because under the current police contract, whenever a court appearance is required when one is not on their shift, overtime is guaranteed. As a midnight officer, Fiorito's court appearances never occur when he was on shift. Defendant Fiorito works the midnight shift at the 23rd Police District and has always worked this shift while

employed by the Chicago Police Department. Defendant Fiorito has thwarted all attempts and/or suggestions to change his shift from the midnight shift to some other shift.

**Answer:** Defendant Officer Fiorito admits that there is no court during defendant's shift and that he worked the midnight shift in the 23rd District, but denies the remainder of the allegations in paragraph 24.

25. When the Chicago Police Department removed the "Court Sergeant" position several years ago, they created an opportunity for traffic officers to abuse the overtime system by appearing in court when not subpoenaed or notified to be there. Fiorito and Hazard routinely appear in court when neither subpoenaed nor notified to be there.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 25.

26. Due to the overwhelming volume of Fiorito's arrests (along with a handful of other police officers-all of whom are or were midnight DUI officers) the city and the Circuit Court of Cook County had to accommodate by adding numerous so-called 'key dates.' Key dates are the once-a-month dates for which an officer is scheduled to appear in court, and for which day his cases are assigned. The vast majority of police officers have a single key date, meaning that they appear in court once a month. On information and belief, Fiorito has four key dates, but is actually in court every day of the week.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 26.

*MONELL FACTS*

27.     That this pattern and practice was silently condoned by Fiorito's supervisors is shown in the DUI statistics themselves. The anti-drunk-driving group, Alliance Against Intoxicated Motorists, keeps and publishes state-wide statistics on DUI arrests. In 2005, six of the eight most prolific DUI writers statewide were midnight traffic enforcement officers in the City of Chicago. The most prolific was Officer John Haleas, who wrote 374 DUI tickets in 2005 (he wrote 372 in 2004). In 2006, four of the seven most prolific DUI writers were midnight shift traffic enforcement officers in Chicago, again Haleas being the most prolific, closely followed by Officers Timothy Walter (19th District traffic enforcement), Fiorito (23rd Dist. Traffic enforcement) and Mariellen Balcar (10th District traffic enforcement). In 2007, Officer Haleas was indicted on multiple counts of perjury related to his numerous false arrests and malicious prosecutions. The false arrests of Officer Haleas are part of a class action suit (see 07 CV 6112). So with Haleas now removed from the street, the two most prolific DUI writers in 2007 were Officer Walter (298 tickets) and Officer Fiorito (230 tickets). Number eight in 2007 was Officer Joe Parker, who is currently under investigation for perjury.

**Answer:**     Defendant Officer Fiorito denies that any improper practice is condoned, but admits Haleas was criminally indicted, but that those charges were dismissed. Defendant lacks knowledge or information sufficient to form a belief as to the accuracy about the statistics.

28.     Further evidence of the silent approval of abuse by the city's most prolific DUI writers comes in the history of traffic enforcement video cameras. The Chicago Police Department initiated its pilot program to include video on traffic enforcement units in

late 2005. But, from 2005 through 2007, and into 2008, none of the most prolific CPD DUI writers had video cameras in their squad cars. They all resisted being given a camera, and the CPD acquiesced to the DUI writers' resistance. It was not until the indictment of Haleas, and then the subsequent pressure from civil rights groups, that the CPD began forcing the more prolific DUI writers to use the video cameras. Fiorito was finally forced to use a squad car with a video camera just two months ago.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 28.

29.     The false arrests and the assigning of the court dates to various different key dates were made possible both by certain city policies that allowed and encouraged overtime abuse and by a silent conspiracy between Fiorito and his supervisors. The city policies that allowed and encouraged the false arrests and overtime abuse include: 1) the agreement to provide overtime to officers making court appearances when not on their shift; 2) the failure to limit the amount of overtime an officer can apply for; 3) the removal of court sergeants from DUI court rooms; 4) the failure to limit the number of key dates an officer can have; 5) lack of oversight or any mechanism for identifying when officers are abusing the overtime system; 6) lack of oversight or any mechanism for identifying when officers are regularly engaging in false arrests; 7) the acquiescence to Fiorito's refusal to use a video camera; 8) the refusal to report the conclusion of Fiorito's colleagues that he was an "overtime whore."

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 29.

*THE SERIES OF TRANSACTIONS*

30.     Between January 1, 2005 and the present, Fiorito has made more than 800 dui arrests. He made many of these arrests unlawfully as part of his scheme to deprive the citizens of Chicago of his honest services and as part of his scheme to deprive his gay arrestees of their equal protection under the law. Among the unlawful arrests and perjuries Fiorito conducted as part of this scheme were:

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 30.

   i.     The false arrest of Kevin Pipkins by Fiorito for a DUI on February 2, 2003.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in i.

   1.     On October 1, 2003, after a bench trial, a judge ruled that the State failed to prove that Piplins was even driving a car on February 2, 2003.

**Answer:**     Defendant Officer Fiorito lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph i(1).

   2.     On August 7, 2004, Fiorito again arrested Pipkins for DUI, this time claiming that Pipkins committed a series of traffic violations over a distance of .84 miles.

**Answer:**     Defendant Officer Fiorito lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph i(2).

   3.     Again, after a bench trial, a judge found Pipkins not guilty of DUI.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph i(3).

   ii.     The September 25, 2004 false arrest of non-Plaintiff Barry Schwartz.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in ii.

1.  On September 25, 2004, Barry Schwartz was pulled over by Defendant Fiorito as he left Little Jim's, a gay bar on North Halsted Street.

**Answer:** Defendant Officer Fiorito admits that he conducted a stop of Barry Schwartz, but lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph ii(1).

2.  Fiorito claimed to have administered the Horizontal Gaze Nystagmus Test. He claimed that there was a "lack of smooth pursuit," "distinct nystagmus at maximum deviation," and "onset prior to 45 degrees (some white showing)" regarding both eyes. Fiorito claimed that Mr. Schwartz had "blood-shot eyes."

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph ii(2).

3.  Barry A. Schwartz has a glass eye which could not have shown a nystagmus, nor could it have been red and blood shot.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph ii(3).

iii.  The false arrest for DUI of Steven KOPP for DUI on February 21, 2005. For that stop,

**Answer:** Defendant Fiorito denies the allegations contained in paragraph iii.

1.  Fiorito falsified police reports when he stated that KOPP, was fumbling documents, had a strong odor of alcohol, and spoke with slurred, mumbled, thick-tongued speech. KOPP was found not guilty after a bench trial.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph iii(1).

iv.  The false arrest for DUI of non-Plaintiff Bonnie Klein on May 15, 2005.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph iv.

1.  On May 15, 2005, Bonnie Klein was pulled over by Defendant Fiorito in front of the Closet, a lesbian bar on North Broadway.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph iv(1).

        2.      When she exited her car, Fiorito began to ridicule her because her key chain was a "rainbow flag," which a symbol of gay pride.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph iv(2).

        3.      Fiorito called Ms. Klein a "dyke" and made repeated references to the Closet, a lesbian bar on North Halsted Street.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph iv(3).

        4.      Fiorito told Klein that her car was being towed for the suspended license plates and that she had to come to the police station with him.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph iv(4).

        5.      Fiorito created false reports wherein he claimed that Klein had difficulty walking to the rear of her car and had to use her car for support. Eye witnesses indicate that Klein had no difficulty walking and did not use her car for support.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph iv(5).

    v.     The false arrest for DUI of Catherine GILDEA on March 9, 2006.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph v.

        1.      While at the 23rd police District, GILDEA requested a lawyer several times. Fiorito told Gildea that he needed her to take another test without telling her what the test was. GILDEA refused the unidentified test and again told Fiorito she wanted a lawyer. Fiorito did not offer a breath test to GILDEA.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph v(1).

2.     At the conclusion of an April 4, 2006 hearing, the judge and ruled that Fiorito did not have reasonable grounds to arrest GILDEA for Driving Under the Influence of Alcohol and that he did not admonish her regarding the breath test, contrary to his in court testimony. The DUI charge against GILDEA is still pending, but is expected to be disposed in a manner indicative of GILDEA's innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph v(2).

vi.     The false arrest for DUI of Darrell MITCHELL on October 15, 2006.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph vi.

1.     Mitchell was arrested while standing next to his parked car which he had not been driving. Both Mitchell and the driver made several attempts to explain to Fiorito that Mitchell was not the driver, but Fiorito arrested Mitchell for DUI and issued four other moving violations. Although not the driver, Mitchell agreed to take a breath test and scored .121.

**Answer:**     Defendant Officer Fiorito admits that plaintiff's breath test was .121, but denies the remainder.

2.     The October 15, 2006, DUI charge against Mr. Mitchell is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:**     Defendant Officer Fiorito admits pending, but denies remainder.

vii.     The false arrest for DUI of Oscar FAEZELL on January 23, 2007.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph vii.

1.     Oscar FAEZELL was driving Jimmy Connor's car because Connor had too much to drink. As FAEZELL was waiting to exit a parking lot near a gay nightclub called Circuit, Fiorito stopped his police car

to allow FAEZELL to exit ahead of Fiorito. Fiorito followed FAEZELL approximately 2 miles from the parking lot to Belmont and Lake Shore Drive.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph vii(1) as stated.

2.     At the Southbound Lake Shore Drive entrance ramp, Fiorito curbed the car FAEZELL was driving. Fiorito testified at Mr. FAEZELL's trial, under oath, that he curbed the vehicle because a computer check of the license plate revealed that the registered owner had an outstanding warrant for his arrest. Defendant Fiorito's testimony was a lie. Jimmy Connor, the registered owner of the license plate, did not have an outstanding warrant on January 23, 2007.

**Answer:**     Defendant Officer Fiorito admits that he curbed Faezell's car, but denies the remaining allegations contained in paragraph vii(2) as stated.

3.     FAEZELL did have an outstanding warrant. Fiorito took FAEZELL into custody and allowed the impaired Connor to drive his car. Fiorito completed a Tow Report for Mr. Connor's car despite the fact that the car was not towed. FAZELL submitted to a breathalyzer test, which revealed a blood alcohol content that was under the legal limit of .08.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph vii(3) as stated.

4.     Fiorito committed perjury when testifying at both the hearing to rescind the statutory summary suspension of Oscar FAEZELL's driver's license and also at the trial for the DUI charge. FAEZELL was found not guilty of a DUI on May 14, 2008, after a bench trial.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph vii(4).

viii.    The false arrest for DUI of non-Plaintiff James Gresh on February 25, 2007, because of perjury by Fiorito, Gresh was found guilty of DUI after a bench trial. He has filed an appeal.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph viii.

ix.    The false arrest for DUI of Shawn RAUCH on April 17, 2007.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph ix.

1.    Defendant Fiorito, in his reports, claimed to have stopped Mr. RAUCH at 4:40 a.m. and arrested him at 4:44 a.m. Records from the Office of Emergency Management and Communications reveal that Defendant Fiorito was already transporting RAUCH to the 23rd Police District at 4:22 a.m.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph ix(1).

2.    When RAUCH told Fiorito he was coming from Hydrate, Fiorito responded by saying, "Oh, that fag joint."

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph ix(2).

3.    RAUCH also had a latino male passenger and had spilled some sour cream on his shirt earlier that night. Fiorito pointed to the stain and said, "Did your Puerto Rican boyfriend cum in your mouth?"

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph ix(3).

4.    At the 23 rd Police District, Defendant Fiorito used excessive force on RAUCH by grabbing him around the throat and shoving his head against the wall, while calling RAUCH a "faggot." The charges against RAUCH remain pending, but are expected to be disposed of in a manner indicative of his innocence.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph ix(4).

x.    The false arrest for DUI of non-plaintiff Nicholas Panno on July 28, 2007. While being held in the 23rd Police District Interrogation room, Fiorito denied Panno's repeated pleas to use the washroom.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph x.

1.      After finishing his paperwork, Fiorito led Panno into a hallway and instructed him to sit on a bench. Panno told Fiorito that he had been sitting for hours and did not want to sit. In response, Fiorito struck Mr. Panno on the back of his right knee with his night stick, causing Panno's legs to buckle and causing severe bruising.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph x(1).

2.      After several hours without access to a bathroom, Panno accidentally urinated on himself and the floor. When Fiorito discovered what had happened, he said, "Now you pissed on my floor, now I have to clean you up."

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph x(2).

3.      Fiorito then left and later returned with a mop. Fiorito mopped up the urine on the floor and then shoved the dirty mop into Panno's crotch, dragging it onto his shirt, and finally his face. Panno was handcuffed and leg-shackled in a seated position at this time. When finished, Fiorito said, "Tis is what you get when you can't control yourself. Now you don't need to go to the bathroom, do you?" Fiorito purposefully denied Panno access to the bathroom until he urinated on himself so that Fiorito would have more evidence to support that Panno was intoxicated that evening.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph x(3).

xi.      The false arrest for DUI of Todd SWINGLEY on August 5, 2007.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph xi.

1.      As part of his attempts to make it appear that he did comply with CPD procedures, Defendant Fiorito falsely testified at a jury trial on February 18, 2009 that he conducted a twenty-two minute investigation of a possible DUI at the scene, which included the field performance tests

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xi(1).

        2.     Records from the Office of Emergency Management & Communication show that Defendant Fiorito was actually only at the scene for thirteen minutes.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xi(2).

        3.     SWINGLEY was found not guilty by a jury of his peers on February 18, 2009, indicative of his innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xi(3).

    xii.    The false arrest of for DUI of James DEAN on October 1, 2007.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xii.

        1.     The arrest occurred outside the 23rd Chicago Police District, only four (4) minutes after DEAN was released from custody on unrelated traffic offenses. DEAN had been in police custody for the previous hour and a half when Fiorito ordered him to move his car, which was still parked in front of the station. DEAN told Fiorito twice that he could not drive because his license was suspended.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xii(1).

        2.     When DEAN attempted to show Fiorito the bond slip proving that DEAN was released from custody four minutes earlier, Fiorito replied, "get in your fucking car and move it." When DEAN complied with this order, Fiorito activated his emergency equipment and arrested DEAN for a DUI, and issued seven additional traffic violations.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xii(2).

3.    On August 6, 2008, Fiorito committed perjury when he testified at the hearing to rescind the Statutory Summary Suspension. At the end of the hearing, the Court ruled that Fiorito did not have reasonable grounds to arrest DEAN for DUI and that he did not admonish him regarding the breath test. The DUI was dismissed in a manner indicative of his innocence.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xii(3).

xiii.    The second false arrest for DUI of Darrell MITCHELL on October 14, 2007 (Fiorito arrested Mitchell for DUI on October 15, 2006).

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xiii.

1.    MITCHELL was approached by Fiorito while he was seated behind the wheel of his vehicle in a gas station on North Halsted.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xiii(1) as stated.

2.    As he approached, Fiorito said to Mitchell, "Oh, it's you again," and arrested him for DUI and six other moving violations. This time, Mitchell was the driver, but he had not been drinking.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xiii(2).

3.    The October 14, 2007, DUI charge is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xiii(3).

xiv.    The false arrest of Julie MATT on November 19, 2007.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xiv.

1.    At approximately 2:00 a.m., MATT and a friend walked out of the Wild Hare nightclub on North Clark Street, and saw Fiorito parked

in a squad car across the street. MATT only drove for a short distance before Fiorito activated his emergency equipment and pulled her over. Fiorito falsely accused MATT of driving without headlights and told her he needed to draw her blood.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xiv(1).

2.      When MATT told Defendant Fiorito that he could not draw her blood, but that she would submit to a breath test, Defendant Fiorito arrested her and transported her to the 23rd Police District. MATT, a 51 year old mother of three, does not drink and had not consumed any amount of an alcoholic beverage that night. MATT asked three to four times for the opportunity to take a Breathalyzer test but was told by Fiorito, "I've already given you the opportunity."

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xiv(2).

3.      The DUI charge against Ms. MATT is still pending, but is expected to be disposed of in a manner indicative of her innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xiv(3).

xv.     The false arrest for DUI of Adam GARVEY on December 7, 2007.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xv.

1.      GARVEY was traveling Northbound on North Clark Street, when he was pulled over by Fiorito. Fiorito falsely accused GARVEY of failing to keep in lanes and failing to stop at a stop sign. GARVEY was not asked to submit to any breath or chemical testing.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xv(1).

2.      On March 10, 2009, Fiorito committed perjury when he testified at the hearing to rescind the Statutory Summary Suspension of GARVEY. At the conclusion of the hearing, the judge ruled that

Fiorito did not have reasonable grounds to arrest GARVEY for DUI and that he, contrary to his testimony, had not admonished GARVEY regarding a breath test.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xv(2).

3. The DUI charge against GARVEY is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xv(3).

xvi. The false arrest for DUI of Brittany SUMMERFORD on December 16, 2007.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvi.

1. Defendant Fiorito stopped SUMMERFORD just after she paused briefly in front of the Closet, a lesbian bar on North Broadway, to say hello to a friend.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvi(1).

2. During his investigation and processing, Fiorito made at least four references to the Closet.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvi(2).

3. During transport from the 23rd Police District to the 19th Police District, the transport officer told Ms. SUMMERFORD, "you don't even smell like alcohol, I shouldn't even be doing this." And went on to say "you should get a lawyer."

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvi(3).

4. An entry in the arrest report made by the lock-up keeper at the 19th District indicates that SUMMERFORD "seemed to be fine, was speaking clearly, and was coherent." The arrest report also states

that when SUMMERFORD was being taken to the women's lockup, she seemed to be fine, was speaking clearly, and was coherent.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvi(4).

5. The charges against Brittany SUMMERFORD are still pending, but are expected to be disposed of in a manner indicative of her innocence.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvi(5).

xvii. The false arrest for DUI of Steven LOPEZ on February 16, 2008.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvii.

1. Fiorito swore under oath that he pulled Mr. Lopez over for his headlights being off after sunset. Defendant Fiorito's testimony was a lie. LOPEZ was driving his 2003 Yukon Denali, which has automatic headlights.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvii(1).

2. LOPEZ attempted to correctly blow into a Breathalyzer three times. After his third failed attempt, Defendant Fiorito said, "Fuck it, I'm putting you down as a refusal." Fiorito testified under oath that while driving, LOPEZ was swerving and playing loud music. Defendant Fiorito's testimony was a lie.

**Answer:** Defendant Officer Fiorito admits that Lopez could not provide a sufficient breath after three attempts. Defendant Officer Fiorito denies the remainder of the allegations contained in paragraph xvii(2).

3. The charges against LOPEZ are still pending, but are expected to be disposed of in a manner indicative of his innocence.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xvii(3).

xviii.   The false arrest for DUI of Steve DERRY in January, 2008, when he was leaving North End.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph xviii.

1.   Derry saw Fiorito driving in a marked police car as he left the North End, a gay bar on North Halsted Street. After waiting for Fiorito to pass, DERRY drove to the IHOP, parked, and entered the restaurant. After eating a full breakfast, DERRY got into his car and started driving again.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph xviii(1).

2.   Fiorito swore under oath that he was looking at Mr. DERRY in his rear view mirror and observed that he was intoxicated and that he did not have his headlights on. Fiorito's testimony was a lie.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph xviii(2).

3.   DERRY was driving a 1990 Land Rover. The headlights for a 1990 Land Rover turn on automatically. At the 23rd District, DERRY overheard Defendant Fiorito tell another officer that he "caught this fag coming out of the bar."

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph xviii(3).

4.   The DUI charge against Mr. DERRY is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph xviii(4).

xix.   The false arrest for DUI of Andrew KEIRCUL on May 1, 2008.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph xix.

1.  At the 23rd Police District, Keircul indicated to Fiorito that he wanted to take a breathalyzer test. On Keircul's first attempt to complete the breathalyzer test, the breathalyzer indicated an insufficient breath sample. Fiorito hit Mr. Keircul on the back of the head with his hand, forcing Keircul's lip to strike the mouthpiece of the breathalyzer, which split Keircul's lip open.

**Answer:**      Defendant Officer Fiorito admits that Keircul did not provide sufficient breath, but denies the remaining allegations contained in paragraph xix(1).

2.  With blood in his mouth, Keircul attempted to blow into the machine a second time. When the breathalyzer indicated for a second time an insufficient breath sample, Fiorito punched Mr. Keircul in the stomach.

**Answer:**      Defendant Officer Fiorito admits that Keircul did not provide sufficient breath the second time, but denies the remaining allegations contained in paragraph xix(2).

3.  The charges against Andrew Keircul remain pending, but are expected to be disposed of in a manner indicative of his innocence.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph xix(3).

xx.    The false arrest for DUI of Jesse LEVIN in June, 2008.

**Answer:**      Defendant Officer Fiorito denies the allegations contained in paragraph xx.

1.  LEVIN was pulling-out from where he was parallel parked when he rear-ended a squad car. Fiorito arrived at the scene and immediately arrested Mr. LEVIN for a DUI without performing any field performance tests.

**Answer:**      Defendant Officer Fiorito admits that Levin rear-ended a squad car and was parallel parked, but denies the remaining allegations in paragraph xx(1).

2.  After he was transported to the 23rd Police District, Mr. LEVIN asked Fiorito if he could submit to a breathalyzer test. Fiorito

refused his request. Fiorito then handcuffed each of LEVIN's arms, separately, to bars and handcuffed his legs. Fiorito then instructed LEVIN to take off his shoes. LEVIN kicked off his shoes, which landed somewhere near Fiorito, but did not come close to hitting him.

**Answer:**     Defendant Officer Fiorito admits Levin kicked off the shoe, but denies the remaining allegations contained in paragraph xx(2).

3.     In response, Fiorito said "you trying to kick me, mother-fucker" and slapped LEVIN with his open hand. Fiorito then punched LEVIN in the forehead with the butt of the palm of his right hand, slamming LEVIN's head into the cinder-block behind him. The DUI charge against Mr. LEVIN is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xx(3).

xxi.     The false arrest for DUI of David SIEBERT on June 27, 2008.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxi.

1.     Seibert was traveling northbound on North Broadway Avenue, when he was pulled over by Fiorito. Fiorito falsely accused Seibert of speeding, failing to use his turn signal, failing to keep in lanes and negligent driving.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxi(1).

2.     On May 5, 2009, Fiorito committed perjury when he testified at a bench trial regarding all traffic violations, field performance tests and observations of Seibert. After a bench trial, Seibert was found not guilty of DUI.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxi(2).

xxii.     The false arrest of Danielle Harder on September 17, 2008.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xxii.

       1.    Fiorito refused Harder's repeated attempts to use the washroom and told her "to pee on herself."

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xxii(1).

    xxiii.  The false arrest for DUI of non-Plaintiff Lex Leaks on October 23, 2008.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xxiii.

       1.    Leaks was pulled over on North Halsted Street by and approximately six police officers, including Fiorito.

**Answer:**    Defendant Officer Fiorito admits he was at the traffic stop of Leaks.

       2.    Leaks performed field sobriety tests, was told he passed and sent on his way. When the other officers had cleared the area, Fiorito followed Leaks, pulled him over again, and arrested him for DUI.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xxiii(2).

       3.    While at the 23rd District Station, Fiorito called Leaks a "fag," "black," and "poor." Leak's belongings were taken during processing at the 23rd Police District, but were never returned.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xxiii(3).

    xxiv.  The false arrest of Stacie HUDGENS on January 9, 2009.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph xxiv.

       1.    Hudgens is completely deaf in her left ear, which is the ear closest to the driver's side of the window, and has lost most of her hearing in her right ear.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxiv(1).

2.     Hudgens repeatedly told Defendant Fiorito that he must look at her when speaking in order for her to understand him. Fiorito failed to comply with CPD procedures by, among other things, deliberately and repeatedly turning his head away from Hudgens.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxiv(2).

3.     Fiorito did this to ensure that she would not understand his instructions. Performance tests are designed to test the ability to follow instructions while completing basic coordination tasks.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxiv(3).

4.     Fiorito ensured that Hudgens would perform poorly by preventing her from reading his lips. Upon arrest, Hudgens requested a sign interpreter. Defendant Fiorito laughed in response and said, "You're talking just fine." Hudgens was never offered a breathalyzer test or admonished regarding refusing to take the test.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxiv(4).

5.     An entry in the arrest report made by the lock-up keeper at the 19th District indicates that Ms. Hudgens was not under the influence of alcohol or drugs and did not smell of alcohol.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxiv(5).

6.     The charges against Hudgens are still pending, but are expected to be disposed of in a manner indicative of her innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxiv(6).

xxv.     The false arrest for DUI of Ryan NILSON as he left the Green Mill at approximately 1:00 a.m. on February 7, 2009.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxv.

   1.   Fiorito asked Nilson to produce his driver's license and insurance, and he complied. Fiorito then proceeded to crack and/or break Nilson's driver's license, informing him that his driver's license was invalid. Fiorito testified under oath that no other officers were involved with the field performance tests. Fiorito's testimony was a lie.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxv(1).

   2.   Fiorito informed Nilson that he had satisfactorily completed all of the tests and that he was not under arrest, but then took Nilson's cell phone and placed him in the back of the squad car. Fiorito did not place Nilson into handcuffs.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxv(2).

   3.   Fiorito thoroughly searched Nilson's car. Fiorito did not have permission, probable cause, or a warrant to search Nilson's car. Fiorito found marijuana in Nilson's car. Fiorito informed Nilson that he was "going in" for a DUI. Fiorito never asked Nilson if he would submit to a breathalyzer or blood test. Fiorito falsely accused Nilson of failing to keep in lanes, driving too slowly, no driver's license, and negligent driving.

**Answer:**     Defendant Officer Fiorito admits that marijuana was found in Nilson's car, but denies the remaining allegations contained in paragraph xxv(3).

   4.   On March 26, 2009, Fiorito committed perjury when he testified at the hearing to rescind the Statutory Summary Suspension regarding all traffic violations, field performance tests and observations of Nilson. At the end of the hearing, the judge ruled that Defendant Fiorito did not have reasonable grounds to arrest Nilson for DUI. The DUI charge against Nilson is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxv(4).

    xxvi.  The false arrest for DUI of Joseph SMITH on February 22, 2009.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxvi.

    1.    SMITH was legally parked and sitting in his car on North Clark Street in front of the Wild Hare nightclub when Fiorito approached and knocked on SMITH's window.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxvi(1).

    2.    Fiorito falsely accused SMITH of leaving the scene of an accident, failing to keep in lanes, failing to stop at a stop sign, driving left of center, and possession of drug paraphernalia.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxvi(2).

    3.    The DUI charge against SMITH is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxvi(3).

    xxvii.  The false arrest of John BARRETT on March 5, 2009.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxvii.

    1.    Fiorito asked Barrett to take a breathalyzer test at the scene of the field performance tests. When Barrett asked if he could instead take a breathalyzer at the station, Fiorito called it a refusal. Barrett stated, for a second time, that he would submit to the test at the police station, but Defendant Fiorito again called this a refusal.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph xxvii(1).

2.   After arriving at the 23rd District police station, Barrett asked
     approximately four times when he could take the breathalyzer test.
     Fiorito said, "When I asked you to blow at the scene, you gave up
     your right to blow." Barrett then said, "If I don't get to blow, you're
     gonna have a hard time getting this to hold up in court." Fiorito
     responded by saying, "I don't care if this holds up or not. I get your
     $1160. I get to go to court and we get your court costs no matter
     what." Fiorito also asked Barrett if his diamond watch was real,
     and then said, "It would be a shame if it happened to get lost."

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph
              xxvii(2).

3.   The person taking Barrett's fingerprints at the 19th District said,
     "He arrested you for a DUI? You look fine to me." While Barrett
     was being transported from the 23rd District to the 19th District,
     the transport officer asked if he was "ok" and stated that Fiorito is a
     "prick." The transport officer also said, "Ask around about Fiorito.
     You can get off this." He told Barrett that "Fiorito is an overtime
     whore."

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph
              xxvii(3).

4.   The charges against Barrett are still pending, but are expected to be
     disposed of in a manner indicative of his innocence.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph
              xxvii(4).

xxviii. The second false arrest of Steve KOPP on March 31, 2009.

**Answer:**   Defendant Officer Fiorito denies the allegations contained in paragraph
              xxviii.

1.   Fiorito falsely accused KOPP of failing to wear his seatbelt, reckless
     driving, and obstructing the flow of traffic. Fiorito falsified police
     reports when he stated that KOPP was driving recklessly, had a
     strong odor of alcohol, had blood-shot eyes, and spoke with a
     slurred, mumbled, thick-tongued speech.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xxviii(1).

    2.     Fiorito recognized KOPP from his 2005 arrest of KOPP.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xxviii(2).

    3.     The DUI charge against KOPP is still pending, but is expected to be disposed of in a manner indicative of his innocence.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph xxviii(3).

31.    In each of these cases, following the false arrests, Defendant Fiorito attended multiple court dates, both earning overtime pay, and perjuring himself during the court of summary suspension hearings, motions to suppress, and/or trials. Fiorito's conduct was extreme and outrageous in that he lied numerous times, both to prosecutors and under oath in Court. Every time Fiorito lied and perjured himself he caused extreme emotional distress to the particular plaintiff that was facing jail time for an offense they did not commit.

**Answer:** Defendant Officer Fiorito admits that he had to obtain multiple court dates for multiple arrests, but denies the remainder of the allegations set forth in paragraph 31.

*CONTINUING TORT*

32.    In each of these cases, following the false arrests, Defendant Fiorito attended multiple court dates, both earning overtime pay, and perjuring himself during the court of summary suspension hearings, motions to suppress, and/or trials. Fiorito's conduct was extreme and outrageous in that he lied numerous times, both to prosecutors and

under oath in Court. Every time Fiorito lied and perjured himself he caused extreme emotional distress to the particular Plaintiff that was facing jail time for an offense that they did not commit.

**Answer:**     Defendant Officer Fiorito admits that he had to obtain multiple court dates for multiple arrests, but denies the remainder of the allegations set forth in paragraph 32.

### COUNT I
### Conspiracy To Commit Civil Rico Violation—All Plaintiffs as Against Defendant Fiorito

33.     Plaintiffs restate and reallege all previously plead paragraphs.

**Answer:**     Defendant Officer Fiorito restates and incorporates all of his prior answers as set forth fully herein.

34.     This cause of action is brought pursuant to 18 U.S.C. § 1962(b), (c) and (d). A racketeering ("RICO") action may be brought by a Plaintiff injured because of the conduct of an enterprise engaging in a pattern of racketeering activity. 18 U.S.C. §1964(c).

**Answer:**     Defendant Officer Fiorito admits the allegations contained in paragraph 34 and Count I are brought pursuant to these statutes, but denies the remainder of the allegations.

35.     At all times material to this Complaint, Defendant Fiorito and his uncomplained-of co-conspirators Officer Hazard, Officer Rodriguez, and unknown supervisors, individually, and collectively, constituted an "enterprise", as that term is defined in Title 18, United States Code, Section 1962 (b), (c), (d).

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 35.

36.     The purpose of the enterprise was to allow Defendant Fiorito, and other unnamed co-conspirators, to unlawfully collect excessive overtime payments from the City of Chicago, thereby depriving the citizens of Chicago of Defendant Fiorito's honest services.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 36.

37.     In engaging in this racketeering, Defendant Fiorito committed multiple predicate offenses that violated Illinois and federal law, and constitute predicate offenses under the RICO statute, including, but not limited to: 1) perjury; 2) obstruction of justice; 3) false imprisonment/kidnapping; and 4) mail fraud, in the form of obtaining excessive unwarranted overtime pay; and 5) fraud in the form of deprivation of honest services by a public official.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 37.

38.     Defendant Fiorito's co-conspirators were, at various times, aiders and abetters to several of these predicate offenses. In particular, Officer Hazard and Officer Rodriguez aided and abetted Defendant Fiorito's perjury and obstruction of justice.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 38.

39.     In addition, certain unnamed supervisors at the 23rd District actually discussed whether to aid and abed Fiorito's overtime abuse scheme, by continuing to sign-off of bad arrests, and while one supervising sergeant decided to stop signing of on bad arrests, another chose to continue to sign off on bad arrests.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 39.

40.     The enterprise was engaged in, and the activities of which affected, interstate and foreign commerce. Specifically, the enterprise: a) falsely arrested individuals that resided outside the state of Illinois, and were forced to make regular trips back to Chicago to attend court; 2) used both electronic communication and United States mail to communicate defamatory and false information about arrestees to out-of-state governments, in order to deprive those falsely arrested of their proper drivers' licenses in other states; 3) on information and belief, Defendant Fiorito used some of the unlawfully obtained excessive overtime pay to make investments and deposits into federally insured instruments; 4) on information and belief, Fiorito used electronic transfers to obtain his ill-begotten overtime pay from the City of Chicago.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 40.

41.     All of the Plaintiffs in the instant complaint were directly injured by Defendant's racketeering activity, in that they were the victims of some of Fiorito's predicate crimes, including his false imprisonments and his perjuries.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 41.

42.     Under the statute, all Plaintiffs are entitled to trebled damages.

**Answer:**     Defendant Officer Fiorito admits the statute provides for treble damages, but denies that plaintiffs are entitled to any recovery.

43.     As a direct, foreseeable, and proximate result of Fiorito's wrongful acts, Plaintiffs suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiffs' in an amount to be proved at time of trial.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 43.

44.     As a further direct, foreseeable, and proximate result of Fiorito's wrongful acts by Defendants, Plaintiffs have incurred attorneys' fees in an amount to be determined, for which Plaintiffs claim a sum to be established according to proof.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 44.

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## COUNT 2
### Monell Claim—By All Plaintiffs as Against City of Chicago

Count 2 is not directed at the Defendant, Officer Fiorito, therefore, Officer Fiorito makes no answer thereto.  To the extent Count 2 is deemed to be against or applicable to Officer Fiorito, he denies each and every allegation contained within Count 2 of Plaintiffs' First Amended Complaint.

45.     Plaintiffs restate and reallege all previously plead paragraphs.

**Answer:**

46.     The actions of Fiorito as alleged above and below were done pursuant to one or more de facto policies, practices, and/or customs of the City of Chicago, Chicago Police Department, and CPD's Office of Professional Standards, and the CPD's Internal Affairs Division.

**Answer:**

47.     Among the de facto policies of the municipality and its agents were:

    a.  The failure to properly investigation allegations of police misconduct.

    b.  The failure to have a system which monitors patterns of alleged police misconduct.

    c.  The failure to properly discipline sustained allegations of police misconduct.

    d.  The failure to properly maintain records of police misconduct and allegations of police misconduct, including the use of excessive force and false arrest.

    e.  The failure to properly hire, train, monitor, and/or supervise officers.

    f.  A de facto policy, practice, and custom of the police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the use of excessive force and the maltreatment of persons, despite their obligation under Department regulations to do so. This conduct included police officers who remain silent or give false or misleading information during official investigations in order to protect themselves or fellow officers from internal discipline or retaliation, civil liability, or criminal prosecution.

    g.  The act of filing excessive Driving Under the Influence (DUI) charges for the purpose increasing their individual compensation.

    h.  The failure to properly verify the validity of DUI charges.

> i. The failure to properly train officers on sexual-orientation sensitivity; and to properly ensure that officers do not have animus towards citizens based on their sexual orientation.

**Answer:**

48. The aforementioned policies, practices, and customs, individually and collectively have been maintained and/or implemented with deliberate indifference by the Defendant City of Chicago, and its subsidiary departments, Office of Professional Standards, and Internal Affairs Division, and have encouraged the individual Defendants to commit the aforesaid wrongful acts against plaintiffs, and therefore acted as a direct and proximate cause of the complained of Constitutional and other legal violations, and Plaintiff's injuries.

**Answer:**

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

### COUNT 3
### Indemnity — By All Plaintiffs As Against City of Chicago
### 745 ILCS 10/9-102

Count 3 is not directed to the Defendant, Officer Fiorito, therefore, Officer Fiorito makes no answer thereto. To the extent Count 3 is deemed to be against or applicable to Officer Fiorito, he admits that the City of Chicago is required to indemnify him for any and all compensatory damages that are levied against him as a result of this lawsuit.

49.     Plaintiffs restate and reallege all previously plead paragraphs.

**Answer:**

50.     Defendant Chicago is the employer of all Defendants Fiorito.

**Answer:**

51.     Defendant Fiorito committed the acts alleged above under color of law and in the scope of employment as an employee of the Chicago of Chicago.

**Answer:**

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

**COUNT 4**
**False Imprisonment – 42 U.S.C. Section 1983**

52.     All previously plead paragraphs are restated and realleged herein.

**Answer:**     Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

53.     Fiorito knowingly arrested and imprisoned Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Keircul, Lopez, Matt, Garvey, Kopp, Seibert, Smith, Derry, Nilson, Levin, and Mitchell without probable cause or any other justification, constituted deliberate indifference to their rights and violating the Fourteenth and Eighth Amendments to the United States Constitution.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph
               53.

54.     As a proximate result of the above actions Plaintiffs were injured, including

physical injuries, mental suffering, anguish, emotional injuries, lost wages, and

humiliation.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph
               54.

       WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter

an Order dismissing this cause of action so wrongfully brought against him and that

Plaintiffs take nothing on this claim for damages and that fees and cost of suit be

assessed against the Plaintiffs.

**COUNT 5**
**Equal Protection – 42 U.S.C. Section 1983**

55.     All previously plead paragraphs are restated and realleged herein.

**Answer:**     Defendant Officer Fiorito restates and incorporates all previously pled
               answers as fully set forth herein.

56.     Fiorito, acting under color of law and within the scope of his employment,

denied Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Garvey, Kopp, Derry

and Nilson equal protection of the law in violation of their constitutional rights. Fiorito

actively participated in, or personally caused, misconduct, without any rational basis,

by violating the rights of Plaintiffs on the basis of their actual and/or perceived sexual

orientation.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph
               56.

57.     As a proximate result of the above actions Plaintiffs were injured, including physical injuries, mental suffering, anguish, emotional injuries, lost wages, and humiliation.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 57.

58.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with the willful indifference to Plaintiffs' constitutional rights.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 58.

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## COUNT 6
### Illegal Search and Seizure – 42 U.S.C. Section 1983

59.     All previously plead paragraphs are restated and realleged herein.

**Answer:**     Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

60.     The searches and seizures of Plaintiffs Barrett, Hudgens, Rauch, Summerford, Dean, Faezell, Keircul, Lopez, Matt, Garvey, Kopp, Seibert, Smith, Derry, Nilson, Levin, and Mitchell's person and property, performed willfully and wantonly by Fiorito, was in violation of Plaintiffs' right to be free of unreasonable searches and seizures under the Fourth Amendment to the Constitution.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 60.

61. As a proximate result of the above actions Plaintiffs were injured, including physical injuries, mental suffering, anguish, emotional injuries, lost wages, and humiliation.

**Answer:** Defendant Officer Firoito denies the allegations contained in paragraph 61.


WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## COUNT 7
### Malicious Prosecution — All Plaintiffs' State Claim Against City and Officer

62. All previously plead paragraphs are restated and realleged herein.

**Answer:** Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

63. By the actions detailed above, Fiorito knowingly sought to and did, in fact, maliciously prosecute Plaintiffs on false charges for which he knew there was no probable cause.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 63.

64.    The Defendant City is sued in this Count pursuant to the doctrine of *respondeat superior*, in that Fiorito performed the actions complained of while on duty and in that employ of Defendant City, and while acting within the scope of this employment.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph 64.

65.    As a proximate result of the above actions Plaintiffs were injured, including physical injuries, mental suffering, anguish, emotional injuries, lost wages, and humiliation.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph 65.

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## COUNT 8
## Intentional Infliction of Emotional Distress Against City and Officer

66.    All previously plead paragraphs are restated and realleged herein.

**Answer:**    Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

67.    The above-detailed conduct by Defendant Fiorito was extreme and outrageous, exceeding all bounds of human decency.

**Answer:**    Defendant Officer Fiorito denies the allegations contained in paragraph 67.

68.     Fiorito's continuous lying and perjury were performed, in part, with the intent

of, or knowledge that they were likely to inflict severe emotional distress on all

Plaintiffs.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph
                68.

69.     As a direct and proximate result of this conduct, Plaintiffs did, in fact, suffer

severe emotional distress, resulting in injury to mind, body, and nervous system,

including loss of sleep, mental anguish, nightmares, anxiety attacks, stress disorders,

and phobias.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph
                69.

70.     The Defendant City is sued in this Count pursuant to the doctrine of *respondeat*

*superior*, in that Defendant Fiorito performed the actions complained of while on duty

and in the employ of Defendant City, and while acting within the scope of this

employment.

**Answer:**     Defendant Officer Fiorito admits that the City is sued pursuant to
                *respondeat superior* and that Fiorito was acting in the scope of his
                employment, but denies Officer Fiorito committed the acts as alleged
                herein.

        WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter

an Order dismissing this cause of action so wrongfully brought against him and that

Plaintiffs take nothing on this claim for damages and that fees and cost of suit be

assessed against the Plaintiffs.

## COUNT 9
## Excessive Force – 42 U.S.C. Section 1983

71.     All previously plead paragraphs are reinstated and realleged herein.

**Answer:**     Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

72.     The actions of Defendant Fiorito constituted unreasonable, unjustifiable, and excessive force against Plaintiffs Rauch, Keircul, and Levin, thus violating their rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C., Section 1983.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 72.

73.     As a proximate result of the above-detailed actions of Defendant Fiorito, Plaintiffs Rauch, Keircul, and Levin were injured, including severe physical injuries, pain, mental suffering, anguish, emotional injuries, and humiliation.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 73.

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## COUNT 10
## Battery — State Claim Against City and Officers

74.     All previously plead paragraphs are restated and realleged herein.

**Answer:** Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

75. By the actions detailed above Defendants intentionally made offensive bodily contract against Plaintiff Jesse Levin and inflicted bodily harm to Plaintiff Levin.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 75.

76. Defendants performed the acts detailed above with the intent of inflicting physical harm to Plaintiff Levin.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 76.

77. As a direct and proximate result of the battery, Plaintiff sustained severe bodily injury.

**Answer:** Defendant Officer Fiorito denies the allegations contained in paragraph 77.

78. The City is sued in this Count pursuant to the doctrine of *respondeat superior*, as the Defendants performed the actions complained of while on duty and in the employ of Defendant City, and while acting within the scope of employment.

**Answer:** Defendant Officer Fiorito admits that the City is sued pursuant to *respondeat superior* and that Fiorito was acting in the scope of his employment, but denies Officer Fiorito committed the acts as alleged herein.

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing on this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## COUNT 11
## False Arrest — State Claim Against City and Officers

79.     All previously plead paragraphs are restated and realleged herein.

**Answer:**     Defendant Officer Fiorito restates and incorporates all previously pled answers as fully set forth herein.

80.     Defendant Fiorito had no probable cause to stop Plaintiffs Garvey, Kopp, Nilson, Smith, Barrett, Keircul, or Seibert as they were obeying all traffic laws.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 80.

81.     Plaintiffs were arrested as a result of the unconstitutional conduct of Defendant, who did not have a warrant for any of the Plaintiffs' arrest, reasonable suspicion, or any true belief or indicia that Plaintiffs had committed any crime, violating Plaintiffs' rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 81.

82.     Plaintiffs were also detained for a period of time once being transported to the police station.

**Answer:**     Defendant Officer Fiorito admits that plaintiffs were detained for a period of time following their arrest.

83.     Defendant Fiorito's conduct in committing these acts were willful, wanton, and without regard for the constitutional rights of the Plaintiffs.

**Answer:**     Defendant Officer Fiorito denies the allegations contained in paragraph 83.

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing in this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## AFFIRMATIVE DEFENSES

1.  Defendant Fiorito is a government official, namely a police officer, who performs discretionary functions.  At all times material to the events alleged in plaintiff's complaint, reasonable Police Personnel, objectively viewing facts and circumstances then confronting Defendant Fiorito during the incident which allegedly provides the basis for the present case, could have reasonably believed the actions taken by him was objectively reasonable and was within the Constitutional limits that were clearly established at the time.  Defendant Fiorito is, therefore, entitled to qualified immunity.

2.  As to any state claims under Illinois law, under the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Illinois Tort Immunity Act"), Defendant Fiorito is not liable for any of such claims alleged because the defendant's actions with respect to plaintiff were based upon the information and circumstances known to Defendant Fiorito at the time and were discretionary for which he is immune from liability.  745 ILCS 10/2-201(West 2006).

3. As to any State law claims, under the Illinois Tort Immunity Act, Defendant Fiorito is not liable for any claims alleged because a public employee is not liable for his

or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-2004 (West 2006).

4. Under the Illinois Tort Immunity Act, Defendant Fiorito is not liable for any of the claims alleged because a public employee, as such, and acting within the scope of his employment is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204 (West 2006).

5. As to any State Law claims, under the Illinois Tort Immunity Act, Defendant Police are not liable for injury allegedly caused by the instituting or prosecuting any judicial or administrative proceeding within the scope of their employment, unless they acted maliciously and without probable cause. 745 ILCS 10/2-208 (West 2006).

6. Where Defendant Fiorito may be liable in damages, the total amount of damages to which Plaintiff would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of the willful and wanton and intentional conduct of Plaintiff's which were the proximate cause of these injuries.

7. At the time of the actions alleged in Plaintiff's complaint, 735 ILCS 5/2-1116 (West 2006) was in effect and reduces Plaintiff's recovery according to his contributory negligence and bars his recovery entirely when the Plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

8. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the

principle that Plaintiffs have a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

9. There was probable cause to stop Plaintiffs' automobile and issue traffic citations on the day in question.

10. Plaintiffs' criminal matters have not been concluded in Plaintiffs' favor indicative of innocence, thereby precluding Plaintiffs' claims stemming from that arrest and prosecution.

11. An award of punitive damages would deprive Defendant Fiorito of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where:

> (a)     liability for punitive damages has not been proven beyond a reasonable doubt, or at least by clear and convincing evidence; and
>
> (b)     the award of punitive damages is disproportionate to actual damages.

12. Plaintiff has failed to allege a claim under Illinois law for Intentional Infliction of Emotional Distress.

## JURY DEMAND

Defendant Officer R. Fiorito demands trial by jury.

Respectfully submitted,

OFFICER R. FIORITO, Star #11624

By: /s/ Daniel F. Gallagher

Daniel F. Gallagher
Larry S. Kowalczyk
Dominick Lanzito
Querrey & Harrow, Ltd.
175 W. Jackson Blvd.
Suite 1600
Chicago, IL 60604
(312) 540-7000
Document #: 1479114