51282-DFG

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JAMES DEAN, JR., and STEVE LOPEZ,<br>　　　　　　　　　Plaintiffs, | No. 09 CV 1190 |
| v. | Honorable Judge Kennelly |
| CITY OF CHICAGO, and CHICAGO POLICE OFFICER R. FIORITO, Star #11624,<br>　　　　　　　　　Defendants. | Magistrate Judge Nolan |

## DEFENDANT'S ANSWER TO PLAINTIFFS' FOURTH AMENDED COMPLAINT

NOW COMES the Defendant, CHICAGO POLICE OFFICER R. FIORITO, Star #11624, by and through his attorneys, Querrey & Harrow, Ltd., and for his Answer to Plaintiffs' Fourth Amended Complaint, states as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 to address deprivations of Plaintiffs' rights under the Constitution of the United States and also under Illinois law.

**ANSWER**:　Defendant Officer Fiorito admits this is brought pursuant to Section 1983, but denies that there were any deprivations to plaintiffs' rights.

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§1983 and 1985; the judicial code 28 U.S.C. §§1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. §1367(a).

**ANSWER**:　Defendant Officer Fiorito admits the allegations contained in paragraph 2.

3. Venue is proper under 28 U.S.C. §1391(b). The events alleged herein all occurred in the Northern District of Illinois.

**ANSWER**:　Defendant Officer Fiorito admits the allegations contained in paragraph 3.

### PARTIES

4. James Dean, Jr., and Steven Lopez, are residents of the Northern District of Illinois and were arrested and unlawfully charged with DUI by Defendant Fiorito in Chicago's Lakeview neighborhood.

**ANSWER**: Defendant Officer Fiorito admits that the Plaintiffs are residents of the Northern District of Illinois, denies the remainder of the allegations set forth in paragraph 4.

5. At all relevant times, Defendant Fiorito was an employee and agent of the Chicago Police Department, and the Defendant City of Chicago, and acted under color of law as a duly appointed Chicago Police Officer and within the scope of his employment.

**ANSWER**: Defendant Officer Fiorito admits the allegations set forth in paragraph 5.

6. Defendant City is a municipal corporation organized under the laws of the State of Illinois. It was, at all relevant times, the employer and principal of Defendant Fiorito.

**ANSWER**: Defendant Officer Fiorito admits the allegations set forth in paragraph 6.

### FACTS

7. For years, Defendant Fiorito has engaged in a continuing course of unlawful conduct as a Chicago Police officer, motivated, at least in part, by pecuniary gain.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 7.

8. This course of conduct includes stopping unimpaired drivers without legal justification, and then charging them with Driving Under the Influence ("DUI") without probably cause, as part of an ongoing scheme to accumulate overtime pay for court appearances.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 8.

9. Both Plaintiffs were arrested by Defendant Fiorito.

**ANSWER**: Defendant Officer Fiorito admits the allegations set forth in paragraph 9.

10. Plaintiffs' arrests involved a common set of improper and unlawful practices by Fiorito.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 10.

11. Plaintiffs were arrested and charged with DUI as part of a series of transactions which cumulatively comprise a single continuing course of conduct or scheme by Defendant Fiorito.
**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 11.

12. Both the Plaintiffs' arrests were the result of the institution of false DUI charges.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 12.

2

13. As part of this course of conduct, Defendant Fiorito administered the Standardized Field Performance Tests to all of his arrestees without complying with Chicago Police Department and National Highway Traffic Safety Administration procedures, and then created false police reports and provided false testimony to indicate that he did comply with the procedures.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 13.

14. As part of this course of conduct, Fiorito falsely testified in police reports and in court, with striking similarity, that his arrestees uniformly failed all field sobriety tests.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 14.

15. As part of this course of conduct, Defendant Fiorito routinely testified falsely in his reports that drivers, including all of the Plaintiffs, were "staggering," and/or "cannot keep their balance," "cannot perform tests," "demonstrates nystagmus," "has a strong odor of alcohol," have "red, blood-shot eyes," were "combative" and spoke with "slurred, mumbled, thick-tongued speech."

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 15.

16. As part of this course of conduct, and with striking similarity from arrest to arrest, Fiorito routinely testified falsely in police reports and in court that drivers "fail to stay in lanes," "swerve, speed, drive without headlights," "almost strike parked cars," and "fail to wear seatbelts."

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 16.

17. The similarities between each of Defendant's reports and repetitious word choice are not coincidence, but rather *modus operandi* utilizing a purposeful use of language designed to create the appearance of probable cause to sustain a conviction.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 17.

18. On October 1, 2007, Defendant Fiorito ordered James Dean, Jr. to drive a motor vehicle and then immediately arrested and charged James Dean, Jr. for DUI, despite a lack of probable cause of any evidence of impairment.

**ANSWER**: Defendant Officer Fiorito admits that James Dean, Jr. was arrested on October 1, 2007, but denies the remaining allegations set forth in paragraph 18.

19. On February 16, 2008, Defendant Fiorito, stopped Plaintiff Lopez without any legal justification, and then subsequently arrested and charged Plaintiff Lopez with DUI, despite a lack of probable cause to do so.

**ANSWER**: Defendant Officer Fiorito admits that Steve Lopez was arrested on February 16, 2008, but denies the remaining allegations set forth in paragraph 19.

20. Defendant Fiorito caused both Plaintiffs to be charged and prosecuted for crimes they did not commit.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 20.

21. On November 4, 2009, a representative of the Cook County State's Attorney indicated publicly that because "there are serious questions regarding Fiorito's credibility," Fiorito would no longer be used as a witness for the prosecution.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 21.

22. Ultimately, all of the Plaintiffs' DUI charges were disposed of in a manner indicative of their innocence.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 22.

### Policy Allegations Against the City of Chicago

23. Defendant Fiorito engaged in a pattern of false DUI arrests for financial gain. This pattern is not a coincidence; it is the result of the policies of the City of Chicago, which allowed for the abuse of their own overtime system by its failure to adequately supervise, investigate and discipline its police officers.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 23.

24. Prolific DUI writers Officers were for too long given free range by the Department to violate the law in order to bring in high numbers of DUI arrests, thereby obtaining financial gain for themselves through the unlawful arrests and malicious prosecutions of innocent drivers.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 24.

25. The anti-drunk driving group, Alliance Against Intoxicated Motorists, keeps and publishes state-wide statistics on DUI arrests. In 2005, six of the eight most prolific DUI writers statewide were midnight traffic enforcement officers in the City of Chicago. The most prolific was former police officer John Haleas.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 25 as stated.

26. In 2006, four of the seven most prolific DUI writers were midnight shift traffic enforcement officers in Chicago; Former Chicago Police Officer John Haleas topped the list. He

was closely followed by Defendant Fiorito. The eighth largest DUI writer in 2007 was Officer Joe Parker, another former Chicago Police officer.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 26 as stated.

27. Officers Haleas, Parker and Fiorito are or were midnight officers. As a midnight officer, Fiorito is paid overtime every time he goes to court because, under the current police contract, whenever a court appearance is required when one is not on duty, overtime is guaranteed. As a midnight officer, Fiorito's court appearances never occur when he is on duty.

**ANSWER**: Defendant Officer Fiorito admits that he and Officer Haleas were midnight officers, that there was no traffic court conducted during his shift, and that the Collective Bargaining Agreement provides for the payment of overtime or comp time when an officer goes to court but is not on duty. Further answering, Officer Fiorito denies the remaining allegations set forth in paragraph 27.

28. When the Chicago Police Department removed the "Court Sergeant position in traffic court, it created an opportunity for traffic officers to abuse the overtime system by appearing in court unnecessarily, due to a lack of departmental supervision.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 28.

29. Due to the overwhelming volume of Fiorito's arrests (along with a handful of other police officers, including Parker and Haleas, all of whom are or were midnight DUI officers) the City added numerous so-called 'key dates' to his court schedule. Key dates are the once-a-month dates for which an officer is scheduled to appear in court and for which day his cases are assigned. The vast majority of police officers have a single key date per month, meaning that they appear in court once a month. On information and belief, Fiorito had four key dates, but was actually in court nearly every day of the week.

**ANSWER**: Defendant Officer Fiorito admits that he had more than one key date and has had up to four key dates at one time, but denies the remaining allegations set forth in paragraph 29.

30. In March 2008, Officer Haleas was indicted on charges of perjury and official misconduct related to numerous false DUI arrests and malicious prosecutions. In July of 2009, Officer Parker agreed to resign his office and forgo his pension after revelations of perjury and false DUI arrests.

**ANSWER**: Defendant Officer Fiorito admits that Officer Haleas has been criminally charged, but denies the remaining allegations set forth in paragraph 30.

31. The Chicago Police Department initiated its pilot program to include video and traffic enforcement units in late 2005. But, from 2005 through 2007 and into 2008, not one of the most prolific Chicago Police DUI writers had video surveillance systems in their squad cars. It was

not until the indictment of Haleas, that the CPD began forcing the more prolific DUI writers to use the video cameras.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 31.

32. These DUI-focused officers were allowed to abuse citizens and the criminal court process by, among other things, making false arrests and police reports, fabricating and/or withholding evidence, and illegally searching citizens and their vehicles.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 32.

33. The Chicago Police Department amassed multiple complaints related to the above practices by these DUI writers, but routinely "not-sustained" or "unfounded" them without any thorough investigation.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 33.

### The City's Deliberate Indifference

34. The City of Chicago maintains a de facto policy, practice and custom of failing to properly train, supervise, discipline and control its officers, which was the moving force behind the violations of the Plaintiffs' constitutional rights.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 34.

35. The City Council is the final policymaker for the Chicago Police Department. Within the City Council, the Committee on Police and Fire has jurisdiction over all matters relating to the Police Department.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 35.

36. The Superintendent to the Police is the chief executive officer of the police department. By authority delegated to him by municipal ordinance, he has the authority to issue department directives, to issue instructions to the CPD's employees, and to take disciplinary action against the employees.

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 36.

37. Municipal policy-makers have long been aware of the City's policy and practice of failing to properly train, monitor and discipline its police officers who engage in misconduct.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 37.

38. In 1999, the City Council held public hearings on the failure of the Department's disciplinary system. At those hearings, members of the Council assured the public that changes would be made to the Chicago Police Department policies and practices to address these issues.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 38.

39. On September 28, 1999, the then Superintendent of police gave a speech highlighting problems with the City of Chicago's policies and practices relating to the use of force. Superintendent Hillard spoke specifically of the need for, among other things, early detection of potential problem officers and an effective disciplinary system.

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 39.

40. In January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 40.

41. A study performed a year later by the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality.

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 41.

42. Two years later, a federal jury in the case of *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department.

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 42.

43. In the summer of 2008, Police Superintendent Weiss gave the following statement on the nationally broadcast television program 60 minutes:

> "I think there probably was an atmosphere that, "Hey, we're above the law. We're getting great stats. We're pulling guns off the street, we're taking down drug dealers.

> Yeah, maybe we are breaking the rules, maybe we are breaking the laws, but look what we've accomplished.' They lost their way, and it saddens me because supervisors have a lot of power, and if they're encouraging their people to engage in misconduct, or actually in some instances, to even engage in criminal activity, that is horrific, in my eyes."

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 43.

44. Although the City of Chicago had long been aware that its supervision and discipline of police officers was entirely inadequate, the Internal Affairs Division (IAD) of the Chicago police department, which is comprised of the Chicago police officers, still investigates all non-excessive force cases, and the City has failed to enact any measures to address their failures to adequately investigate and discipline non-excessive force complaints, such as the false DUI complaints made against Officer Fiorito, Haleas and Parker.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 44.

45. In approximately January of 2008 and then again in January of 2009, two of Defendant Fiorito's own supervisors, a Captain and a Sergeant, suspected Fiorito of participating in a fraudulent DUI overtime scheme and falsifying DUI reports. These two supervisors initiated "confidential" investigations with the Internal Affairs Division (IAD) of the Chicago Police Department. But neither of these investigations resulted in any consequences to Defendant Fiorito, and on information and belief, these investigations were never disclosed to the State's Attorneys' Office during their criminal investigation of Fiorito. These investigations were also never disclosed to the citizens defending themselves in court against Fiorito's false DUI allegations in 2008 and 2009, including Plaintiffs.

**ANSWER**: Defendant Officer Fiorito admits only that a Sergeant made a complaint regarding the times recorded for a "Warning to Motorist," that a reprimand was recommended and was accepted by Officer Fiorito on July 13, 2011. On information and belief, Officer Fiorito has not received an official reprimand and IAD continues to list this CR as "open." Further answering, Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the remaining allegations set forth in paragraph 45.

46. On January 10, 2010, Chicago Police Officer Nancy Long initiated an IAD complaint against Officer Fiorito because he had attempted to intimidate her for cooperating with the Cook County State's Attorney's Office during their criminal investigation of Fiorito. On information and belief, this possibly criminal conduct by Officer Fiorito was never disclosed to prosecutors.

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 46.

47. Instead, these investigations were buried by the Chicago police department and by Defendant City. On information and belief, the police department either entirely failed to

8

investigate the Captain's report of Fiorito's suspected fraudulent overtime practices, or it investigated it, but then "lost" its own file resulting in no consequences to Defendant Fiorito.

**ANSWER**: Defendant Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 47.

48. The second police supervisor to complain about Fiorito in January of 2009, complained that Fiorito had completed false police reports concerning the DUI arrest with which the Sergeant had assisted Fiorito. In June of 2010, while this and several other civil cases were pending against Defendant Fiorito, the Sergeant's complaint was sustained and it was recommended that Fiorito receive a reprimand, only. As of August 23, 2011, even that has not occurred.

**ANSWER**: Defendant Officer Fiorito admits only that the Sergeant's complaint regarding the times recorded for a "Warning to Motorist" was sustained, that a reprimand was recommended and was accepted by Officer Fiorito on July 13, 2011. On information and belief, Officer Fiorito has not received an official reprimand and IAD continues to list this CR as "open." Further answering, Officer Fiorito has insufficient knowledge and information to form a belief as to the truth of the remaining allegations set forth in paragraph 48.

49. The City of Chicago condones, and through its own attorneys actually participates in, a pattern and practice of violating B*rady v. Maryland* by withholding, material exculpatory evidence from criminal defendants by deliberately abusing the investigative privilege. The City regularly claims the investigative privilege by falsely proclaiming internal investigations "open" or on-going, long after any actual investigation has been performed by anyone. In this manner, the City withholds the relevant and admissible evidence contained in these files, especially when there is pending litigation, and until that litigation has resolved. These files, such as the two supervisor-initiated files in this case, contain relevant and admissible evidence that would have been invaluable to Mr. Lopez and Mr. Dean and countless other facing Fiorito false DUI charges. However, these files are regularly kept secret by the Chicago Police Department, even if there is sustained finding. The City thus engages in a pattern and practice of violating *Brady v. Maryland* by withholding, material exculpatory evidence from criminal defendants resulting Due Process violations.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 49 as they relate to him.

50. As of June 8, 2011, Defendant City still condoned Defendant Fiorito's conduct by allowing him to continue to work patrol and make DUI arrests. Though he has been moved to the lock-up during the week, Fiorito is still allowed to work a city-wide patrol unit and make DUI arrests on the weekends.

**ANSWER**: Officer Fiorito admits that he is still allowed to work on road block assignments and that he is assigned to the lock-up in his police district, but denies the remaining allegations set forth in paragraph 50.

9

51. As a result of the City's policies, practices and customs, its officers, including Fiorito, were emboldened by their knowledge that they were "above the law" and would not be held accountable for their misconduct.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 51.

52. At the time of the events described above, Defendant Fiorito knew that the City would not subject him to any meaningful investigation and discipline. His misconduct in this case was a direct result of the City's failure to adequately discipline and control its officers.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 52.

### COUNT I: FALSE ARREST – 42 U.S.C. §1983

53. Plaintiffs Dean and Lopez restate and re-allege all previously plead paragraphs.

**ANSWER**: Officer Fiorito restates and incorporates all of previous answers as fully set forth herein.

54. As a more fully described above, Defendant Fiorito arrested Plaintiffs Dean and Lopez withhold a warrant, probable cause, or any other legal justification to do so, in violation of Plaintiffs' rights under the Fourth Amendment to the United States Constitution.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 54.

55. As a direct and proximate result of their false arrests, Plaintiffs Dean and Lopez suffered damages, including financial and emotional damages, which will be proven at trial.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 55.

### COUNT II: *MONELL* POLICY CLAIM

**Officer Fiorito provides no answers to the allegations contained in Count II as they relate to claims against the City of Chicago. To the extent this count applies to Officer Fiorito individually, he denies each and every allegation in Count II of this Complaint.**

56. Plaintiffs Dean and Lopez restate and re-allege all previously plead paragraphs.

**ANSWER**:

57. The misconduct described in the preceding paragraphs was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct

        at issue here by failing to adequately discipline, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, The Chicago Police Department facilitates the very type of misconduct at issue hereby failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago police officers accused of misconduct can be confident that the Department will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in misconduct;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by plaintiff on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

e. As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career; and

f. Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers;

**ANSWER**:

58. As a proximate result of the above-detailed actions of Defendants, Plaintiff was injured, including physical injuries and emotional distress.

**ANSWER**:

## COUNT III:  ILLINOIS MALICIOUS PROSECUTION

59. Plaintiffs Dean and Lopez restate and re-allege all previously plead paragraphs.

**ANSWER**:     Officer Fiorito restates and incorporates all of previous answers as fully set forth herein.

11

60. Defendant Fiorito willfully and wantonly initiated legal proceedings against Plaintiffs, and/or caused these legal proceedings to continue against them, without probable cause to do so.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 60.

61. With malice, willfulness, and/or reckless indifference to Plaintiff's rights, Defendant Fiorito created false and/or inaccurate police reports and/or made false statements to other police officers and prosecutors.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 61.

62. The legal proceedings against Plaintiffs were terminated in their favor, in a manner indicative of innocence.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 62.

63. As a direct and proximate result of Defendant Fiorito's malicious prosecution, Plaintiffs suffered emotional and financial damages which will be proven at trial.

**ANSWER**: Defendant Officer Fiorito denies the allegations set forth in paragraph 63.

64. Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

**ANSWER**: This allegation contains a legal conclusion; therefore, Defendant Officer Fiorito provides no answer hereto.

65. At all relevant times, Defendant Fiorito was an agent of Defendant City, and acting within the scope of his employment as a Chicago police officer. Defendant City, therefore, is liable as principal for the torts Defendant Fiorito committed against Plaintiffs.

**ANSWER**: Defendant Officer Fiorito admits that he was acting in the scope of his employment when he arrested plaintiffs and that the City must indemnify him for compensatory damages levied against him, but denies the remaining allegations set forth in paragraph 65.

**INDEMNIFICATION—Both Plaintiffs Against City of Chicago – 745 ILCS 10/9-102**

**Defendant Officer Fiorito provides no answers to this Count of Plaintiffs' Fourth Amended Complaint, as this Count is not directed at him. To the extent an answer is required, Defendant Officer Fiorito admits that the City of Chicago must indemnify him for all compensatory damages in this matter**.

66. Plaintiffs Dean and Lopez restate and re-allege all previously plead paragraphs.

**ANSWER**:

67. Defendant Chicago is the employer of Defendant Fiorito.

**ANSWER**:

68. Defendant Fiorito committed the acts alleged above under color of law and in the scope of employment as an employee of the City of Chicago.

**ANSWER**:

WHEREFORE, Officer Fiorito, respectfully prays this Honorable Court to enter an Order dismissing this cause of action so wrongfully brought against him and that Plaintiffs take nothing in this claim for damages and that fees and cost of suit be assessed against the Plaintiffs.

## AFFIRMATIVE DEFENSES

1. Defendant Fiorito is a government official, namely a police officer, who performs discretionary functions. At all times material to the events alleged in plaintiff's complaint, reasonable Police Personnel, objectively viewing facts and circumstances then confronting Defendant Fiorito during the incident which allegedly provides the basis for the present case, could have reasonably believed the actions taken by him was objectively reasonable and was within the Constitutional limits that were clearly established at the time. Defendant Fiorito is, therefore, entitled to qualified immunity.

2. As to any state claims under Illinois law, under the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Illinois Tort Immunity Act"), Defendant Fiorito is not liable for any of such claims alleged because the defendant's actions with respect to plaintiff were based upon the information and circumstances known to Defendant

Fiorito at the time and were discretionary for which he is immune from liability. 745 ILCS 10/2-201(West 2006).

3. As to any State law claims, under the Illinois Tort Immunity Act, Defendant Fiorito is not liable for any claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-2004 (West 2006).

4. Under the Illinois Tort Immunity Act, Defendant Fiorito is not liable for any of the claims alleged because a public employee, as such, and acting within the scope of his employment is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204 (West 2006).

5. As to any State Law claims, under the Illinois Tort Immunity Act, Defendant Police are not liable for injury allegedly caused by the instituting or prosecuting any judicial or administrative proceeding within the scope of their employment, unless they acted maliciously and without probable cause. 745 ILCS 10/2-208 (West 2006).

6. Where Defendant Fiorito may be liable in damages, the total amount of damages to which Plaintiff would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of the willful and wanton and intentional conduct of Plaintiff's which were the proximate cause of these injuries.

7. At the time of the actions alleged in Plaintiff's complaint, 735 ILCS 5/2-1116 (West 2006) was in effect and reduces Plaintiff's recovery according to his contributory negligence and bars his recovery entirely when the Plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

8. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiffs have a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

9. There was probable cause to stop Plaintiffs' automobile and issue traffic citations on the day in question.

10. Plaintiffs' criminal matters have not been concluded in Plaintiffs' favor indicative of innocence, thereby precluding Plaintiffs' claims stemming from that arrest and prosecution.

11. An award of punitive damages would deprive Defendant Fiorito of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where:

    (a)     liability for punitive damages has not been proven beyond a reasonable doubt, or at least by clear and convincing evidence; and

    (b)     the award of punitive damages is disproportionate to actual damages.

## JURY DEMAND

Defendant Officer R. Fiorito demands trial by jury.

Respectfully submitted,

OFFICER R. FIORITO, Star #11624

By:/s/ Daniel F. Gallagher

Daniel F. Gallagher
Larry S. Kowalczyk
Dominick Lanzito
Querrey & Harrow, Ltd.
175 West Jackson Blvd.
Suite 1600
Chicago, IL 60604
(312) 540-7000

Document #: 1592405

15