**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES DEAN, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09 C 1190** |
| | ) | |
| **CITY OF CHICAGO and CHICAGO** | ) | |
| **POLICE OFFICER R. FIORITO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

James Dean, Jr. has sued the City of Chicago and former Chicago police officer Richard Fiorito, claiming that Fiorito arrested him without probable cause and made false statements that caused him to be charged with a crime. Dean has asserted two claims against Fiorito: a Fourth Amendment claim under 42 U.S.C. § 1983 and a state law claim of malicious prosecution. Dean has also asserted two claims against the City: a claim under 745 ILCS 10/9-102 for indemnification of any liability of Fiorito, and a claim under section 1983 alleging that the City caused the constitutional violation by having a policy of failing to investigate and discipline Fiorito and other officers for similar misconduct. The Court previously severed the policy claim for trial.

Fiorito and the City have moved for summary judgment. For the reasons stated below, the Court denies the motions.

**Facts**

Becuase the defendants have moved for summary judgment, the Court

construes the facts as favorably to Dean as the record reasonably permits. *See, e.g.,*
*Sroga v. Weiglen*, 649 F.3d 604, 605 (7th Cir. 2011).

On October 1, 2007, Dean went to Japonais Restaurant in Chicago in the early
evening. While there, he had one shot of tequila. Upon leaving the restaurant, Dean
got into the car that he had driven there, which belonged to a friend. He drove the car
to a bar in the Lakeview neighborhood, where he picked up a real estate client whom
he intended to show around the area. Less than ten minutes after Dean started driving,
Officer Thomas Walsh pulled him over and told him that he was "driving left of center."
Dean Dep. at 73:13. Dean gave Walsh his driver's license, but when he looked for
insurance, he found that the car's owner had not left it in the glove compartment.
Walsh ran Dean's license and determined that it had been suspended, which Dean
does not dispute. Walsh then told Dean that because of the suspension and lack of
insurance, he would have to detain Dean and impound the car. In this lawsuit, Dean
does not challenge his detention at the hands of Walsh.

Walsh took Dean to the nearby police station located on the corner of Addison
and Halsted Streets. It took around two hours to book and process him. Dean testified
that he had no complaints with how he was treated during this process. The officers
handling his booking gave him several citations and released him.

Neither Walsh nor Officer Long, who transported Dean to the police station,
detected any odor of alcohol on Dean or any sign of impairment. Neither of them saw
any reason to conduct any sort of a DUI investigation.

When he left the police station, Dean saw that the car he had been driving was
parked immediately in front of the station on Addison Street. The car was facing west

and was parked next to a fire hydrant. Dean does not know who brought it there. He believed the car had been impounded, although it later turned out that this was not the case. Dean did not have the keys, but the car's doors were unlocked. Dean opened the car door and retrieved his cell phone. Standing somewhere near the car, Dean telephoned Walsh and left him a voice mail message "thanking him for his professionalism." *Id.* at 92:3.

Immediately after leaving the message, Dean saw a police squad car pull up on Addison behind Dean's friend's vehicle. A police officer in the car – Officer Fiorito – "yell[ed] through his loud speaker to move the [god-damned] car," several times. *Id.* at 92:17-23. Dean "attempted to inform him that I did not park the car there, that I did not think it was okay for me to move a vehicle that was impounded and that he should just speak to Officer Walsh who had just arrested me." *Id.* at 93:10-14. There is evidence that Fiorito heard Dean's reference to Officer Walsh, because according to Dean, Fiorito belligerently said that "he didn't care who parked the car there, to get into the [god-damned] car and move it because that's for police parking only. You can't park by a hydrant." *Id.* at 93:17-20.

Dean testified that at that point, "I had to make a gut decision as to whether or not to do what the police officer said, and so I did." *Id.* at 102:2-4. He got into the car and was able to start it using a push-button system. He saw that there was a spot available directly across Addison. Florito claims that Dean did a U-turn, but Dean testified otherwise. Specifically, Dean testified that he entered into the traffic lane, made a left turn into a gas station, and then did a "reverse maneuver" and parked in the

spot he had seen. *Id.* at 106:13-19. *See also id.* at 108:7-19 (answering a question from Fiorito's lawyer about this "three point turnabout" and repeating that he had pulled into the gas station and performed a three-point turn).

After Dean had parked in this spot and as he was getting out of the car, Fiorito again pulled up behind him and "yell[ed]" on his loudspeaker, "that's for police officers only." He told Dean to "stay in the car and to move the [god-damned] car." *Id.* at 107:12-17. At that point, Dean pulled back out into the traffic lane, drove to the intersection of Addison and Halsted, waited for the traffic light to turn green, crossed Halsted, and parallel parked on the south side of Addison Street east of the intersection. *Id.* at 124:22-125:3.

After Dean parked in this third spot, Fiorito approached the car and performed a field sobriety test. Fiorito asked Dean if he had had anything to drink, and Dean said that he drank a shot of tequila "[e]arlier in the day," although he does not recall exactly what time he said he drank it. *Id.* at 113:6. Fiorito decided to administer sobriety tests. He had Dean walk a straight line and touch his nose, among other things. Dean testified that he passed all of these tests. *Id.* at 114:12. Fiorito asked Dean to take a breathalyzer test. Dean refused, stating that his cousin, who worked for the highway patrol, had told him never to take a breathalyzer test. At some point, Fiorito asked Dean for his driver's license. Dean gave Fiorito the tickets he had just received. Fiorito learned from looking at these tickets that Dean had just been cited for driving on a suspended license. Pl.'s Resp. to Fiorito's L.R. 56.1 Stmt. ¶ 54.

Fiorito placed Dean under arrest and handcuffed him. Fiorito then got into Dean's friend's vehicle and moved it. He then walked Dean to the police station. He

referred to Dean with a racial slur while he did so.  Dean Dep. at 114:4-7.  Once at the station, Fiorito attached Dean's handcuffs to a pipe and booked him.  He informed Dean that if Dean refused to take a breathalyzer test, his driver's license would be suspended for six months.  Dean refused to take the test.  Fiorito issued tickets to Dean for eight offenses:  blocking an intersection, improper traffic-lane usage, driving on a suspended license, operating an uninsured motor vehicle, driving under the influence of alcohol, failure to provide notice of address change, failure to wear a seatbelt, and improper U-turn.  Dean was then released from the police station.

On January 22, 2009, Dean appeared in Cook County Circuit Court.  Pursuant to a plea agreement, he pled guilty to the citations Walsh had issued for driving on a suspended license and operating an uninsured motor vehicle.  In exchange for the plea and payment of a fine on these offences, the state agreed to file a "motion SOL" regarding the citations issued by Walsh for failure to wear a seatbelt and carry a driver's license.  The judge accepted the plea bargain.  At the same hearing, the judge granted a *nolle prosequi* motion by the state regarding the citations issued by Fiorito.

### Discussion

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c).  A court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1.    **False arrest**

"The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim." *Sroga*, 649 F.3d at 608 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004)). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). "Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007).

Defendants claim that Fiorito had probable cause to arrest Dean for five reasons: Fiorito's observation of Dean's vehicle blocking a fire hydrant; Fiorito's observation of Dean executing an illegal U-turn; Fiorito's discovery that Dean was driving without proof of insurance and on a suspended license; Dean's admission that he had consumed alcohol before driving; and Dean's having failed field sobriety tests.

a.    **Fire hydrant**

Although Dean was not cited for blocking a fire hydrant, "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Id.* at 682 (emphasis in original). In addition, "[i]t is not a violation of the Fourth Amendment to arrest an individual for even a very minor traffic offense." *Jackson v. Parker*, 627 F.3d 634, 639 (7th Cir. 2010).

Dean does not dispute that Fiorito observed him standing next to the vehicle, that the vehicle was blocking the fire hydrant, or that parking within fifteen feet of a hydrant is an offense under Illinois law. Pl.'s Resp. to Fiorito's L.R. 56.1 Stmt. ¶¶ 36-37. Defendants contend that in addition to Fiorito's observations, Dean "tied himself to the vehicle by words and action" and that these facts together provided probable cause for the arrest. Fiorito's Reply at 8. Defendants argue that Fiorito had probable cause once Dean "actively engaged Officer Fiorito by moving from his physical location on the sidewalk [and] talking to Officer Fiorito about how the car was not his [and] how he did not park it there." *Id.* at 5-6. Even if probable cause was lacking at that point, according to defendants, it existed once Fiorito observed Dean "[p]hysically moving towards the vehicle, turning said vehicle on, and driving it." *Id.*

The fact, of course, is that Dean had not parked the car there; the police had. Dean contends that during his encounter with Fiorito, Fiorito was "presented with, and ignored, significant evidence that someone other than Dean parked the vehicle illegally," negating probable cause. Pl.'s Resp. at 3. A police officer "may not close his eyes to facts that would clarify the situation, but once an officer has established probable cause, he may end his investigation." *McBride*, 576 F.3d at 707. "[A] police officer cannot consciously disregard information that would bring clarity to a confusing situation." *Mahnke v. Garrigan*, 428 Fed. Appx. 630, 635 (7th Cir. 2011). *See also BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").

Dean has testified that he told Fiorito at the outset that he had not parked the car where it was originally stationed. There is evidence, which a jury could believe, that

7

Fiorito heard what Dean said and chose to disregard it:  Dean testified that Florito responded that "he didn't care who parked the car there."  In addition, by the time Dean was arrested, he had shown Fiorito the citations that Walsh had just given him.  And Dean has offered evidence that it was common for officers to park an impounded car in an illegal spot near the station, and that Fiorito knew this from his own experience.  *See* Pl.'s LR 56.1 Stmt. of Additional Facts ¶¶ 12,13 & 17.  "Although the police must be allowed some margin of error, a police officer evaluating a situation for probable cause must utilize the means at hand to minimize the risk of error."  *Id.*  A reasonable jury could find that there were several "means at hand" that could have indicated that Dean had not parked the car illegally.

A police officer is not required to believe a defense offered by a suspect,"there is meaningful distinction between *disregarding* potentially exculpatory information and *disbelieving* it."  *Mahnke*, 428 Fed. Appx. at 635 (emphasis in original).  A reasonable jury could conclude from this evidence that Fiorito had done the former, "closing his eyes" to readily available information that would negate probable cause on the fire-hydrant offense.

Defendants cite two additional cases in support of their contention that Dean's actions in relation to the car provided probable cause for the arrest.  In the first, a court determined that the plaintiff's arrest for parking on a sidewalk was not invalidated just because the officer may actually have been motivated by a verbal altercation with the plaintiff.  *Lowe v. Spears*, No. 3:06-0647, 2009 WL 1393860, at *3 (S.D. W.Va. May 15, 2009) (citing *Devenpeck*, 543 U.S. at 153 (if probable cause exists to arrest for any

8

crime, an officer's subjective intent is irrelevant)). The case does not help defendants. Dean does not dispute the legal proposition on which it relies, and the case does not indicate that an officer may ignore information that would exculpate the arrestee.

In the second case that defendants cites, the Seventh Circuit determined that officers who had reasonable suspicion to believe that a vehicle was involved in criminal activity also had reasonable suspicion to stop the defendant "once he voluntarily tied himself to the [vehicle] by telling the officer that his girlfriend was driving it." *United States v. Thornton*, 463 F.3d 693, 698 (7th Cir. 2006). Reasonable suspicion, however, is not the same as probable cause. Indeed, a suspect who is stopped based on an officer's reasonable suspicion (but not arrested) has the opportunity to offer explanatory information of the sort that Dean had.

For these reasons, the Court concludes that a reasonable jury could find that Fiorito affirmatively ignored exculpatory information in his possession that negated probable cause on the fire-hydrant offense.

### b. U-turn

Defendants argue that the manner in which Dean drove from the first parking spot to the second violated section 9-16-040 of the Chicago Municipal Code, which states: "The driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction at any point closer than 100 feet to any intersection unless official signs are erected to permit such turns." Fiorito testified that the car was first parked right next to the intersection of Addison and Halsted, which Dean does not appear to dispute. Defendants essentially argue that there is no way that the car could have moved from a westward-facing position in that space to a spot on the opposite side of

9

the street, facing in the opposite direction, without violating the code.

Dean does not dispute that the maneuver he executed took place within one hundred feet of the intersection. He argues, though, that he did not execute a U-turn, which the parties agree is what the code prohibits. Rather, Dean says, he turned into the gas station across the street and conducted a three-point turn. Defendants contend that Dean's denial of a U-turn is based only on "piecing together pieces of various proceeding transcripts," *see* Florito's Reply at 8, but that is a patent misrepresentation of the record. Dean described in detail, and all in one place in the deposition, the maneuver he conducted. *See id.* at 106:13-19. And defense counsel themselves understood it that way at the deposition; in a follow-up question at the deposition, a defense attorney described the maneuver as a "three point turnabout," and Dean then repeated that he had pulled into the gas station and performed a three-point turn. *See id.* at 108:7-15.

Defendants are not entitled to summary judgment based on what are clearly and genuinely disputed facts. A reasonable jury that believed Dean's testimony could conclude from it that he did not "turn[ed] so as to proceed in the opposite direction" on Addison and therefore did not violate the Municipal Code provision. Under Dean's version of the events, Dean did not drive east on Addison at all – his only turn was in the gas station's driveway. Defendants claim that Dean's admission that he did not pass any buildings other than the police station on his right indicates that the only possible maneuver was a U-turn, but the turn that Dean testified he made also would not have required him to pass other buildings.

For these reasons, the Court concludes that a reasonable jury could find that

10

Fiorito lacked probable cause to arrest Dean for completing an illegal U-turn.

### c. Driving without a valid license or proof of insurance

Dean does not dispute that Fiorito observed him driving without a valid license or proof of insurance. He argues, however, that he did so only because he was following Fiorito's instructions, which he did not feel he was entitled to resist. *Cf. Sornberger v. City of Knoxville*, 434 F.3d 1006, 1018 (7th Cir. 2006) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 314 (6th Cir. 2000) ("A police officer's statement that 'you need to go' somewhere carries substantial authoritative weight. We think that very few people could hear such a directive from a police officer and still think they were free to act otherwise.")). Indeed, as Dean points out, resisting the order of an officer acting in his official capacity is itself an offense under Illinois law. *See* 720 ILCS 5/31-1. Dean contends that "[p]robable cause does not exist if an individual performed the alleged illegal act pursuant to the command of a police officer." Pl.'s Resp. at 8.

The Court agrees. It has been clearly established for a good half-century that the authorities cannot direct a person to engage in activity and then prosecute him for doing so. In *Cox v. Louisiana*, 379 U.S. 559 (1965), the defendant was convicted under a state law that prohibited picketing near a courthouse. The record showed, however, that he had been given permission to demonstrate in the particular area where he was arrested. *See id.* at 569-70. The Supreme Court reversed the defendant's conviction, saying that it was prohibited by the Due Process Clause. *Id.* at 571. Sustaining the conviction, the Court ruled, "'would be to sanction an indefensible sort of entrapment by the State – convicting a citizen for exercising a privilege which the State had clearly told

11

him was available to him.'" *Id.* (quoting *Raley v. Ohio*, 360 U.S. 423, 426 (1959)).

One might argue that this is an affirmative defense, similar to the defense of public authority, a well-established legal defense that may be raised by a defendant who "engages in conduct that the defendant knows to be otherwise illegal but has been authorized by the government." *United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011). A claim of public authority "requires reasonable reliance by a defendant on a public official's directive to engage in behavior that the defendant knows to be illegal." *United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009). "[A] police officer need not investigate an individual's claim of an affirmative defense to determine facts unknown to the officer," *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004), but here the facts were not unknown to Fiorito: he himself ordered Dean to drive the car. And though the Fourth Amendment may not have required Fiorito to investigate a possible defense, an officer "may not ignore conclusively established evidence of the existence of an affirmative defense." *McBride*, 576 F.3d at 707 (internal quotation marks and citation omitted). Fiorito did not have to investigate in this situation; he was the one who told Dean to move the car.

For these reasons, the Court concludes that a reasonable jury could find that Fiorito lacked probable cause to arrest Dean on the license and insurance charges.

### d.    Alcohol

Defendants state that Fiorito had probable cause to arrest Dean based on his admission to having had a shot of tequila and having failed sobriety tests. Because Dean testified that he passed the sobriety tests, there is a genuine factual dispute that

12

precludes reliance on his purported failure to support the existence of probable cause.

There is no argument in defendants' briefs to support their statement that a driver's admission to having had one drink provides probable cause for arrest, particularly when the driver successfully completes sobriety tests. The Court has not found any case indicating that this admission provides anything other than reasonable suspicion justifying the administration of sobriety tests. *See, e.g.*, *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008) (finding that defendant's admission to one drink provided reasonable suspicion to conduct sobriety tests); *Bernardi v. Klein*, 682 F. Supp. 2d 894, 903 (W.D. Wis. 2010) (finding that plaintiff's admission of one drink was insufficient for reasonable suspicion). The Court concludes that a reasonable jury could find that Fiorito lacked probable cause to arrest Dean for alcohol-related reasons.

### e. Qualified immunity

Defendants argue that even if there was no probable cause for Dean's arrest, Fiorito would nonetheless be entitled to qualified immunity. An officer "is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston County*, 674 F.3d 874, 880 (7th Cir. 2012) (internal quotation marks and citation omitted). "Thus, as long as [Fiorito] reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest [Dean], then [Fiorito] is entitled to qualified immunity." *Id.*

"Qualified immunity protects those officers who make a reasonable error in

13

determining whether there is probable cause to arrest an individual." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). A reasonable jury that believed Dean's testimony regarding the supposed U-turn and the sobriety tests could conclude that it was not a "reasonable error" for Fiorito to decide that those events supplied probable cause, because in that event Fiorito would have seen with his own eyes that Dean had not done a U-turn and had passed the field sobriety tests. Additionally, for the reasons the Court has explained, a reasonable jury could also conclude that it was unreasonable for Fiorito to close his eyes to the exculpatory information he had regarding the alleged illegal parking and the fact that his own orders had caused Dean to drive despite lacking a license or insurance.

For these reasons, the Court concludes that Fiorito is not entitled to summary judgment on Dean's section 1983 claim.

**2.    Malicious prosecution**

In count three, Dean asserts a claim for malicious prosecution. In order to survive summary judgment, he must provide evidence of "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) (internal quotation marks and citation omitted).

Defendants argue that Dean cannot prevail on the second element of this test because "dismissal by way of a *nolle prosequi* does not count as 'favorable' to the

14

accused if 'the abandonment is for reasons not indicative of the innocence of the accused.'" *Deng v. Sears, Roebuck and Co.*, 552 F.3d 574, 576 (7th Cir. 2009) (quoting *Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1243). They contend that the transcript of the January 22 hearing reflects that the charges associated with the tickets that Fiorito issued were dismissed in direct exchange for a plea agreement regarding the charges on the Walsh tickets.

The Illinois Supreme Court has specified that a *nolle prosequi* is not "indicative of the innocence of the accused" when it is "the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Swick*, 169 Ill.2d at 513, 662 N.E.2d at 1243. The plaintiff has the burden of proof, and he must show that "[t]he circumstances surrounding the abandonment [of the charge] compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id*. at 513-14, 662 N.E.2d at 1243. In *Swick*, neither the *nolle prosequi* order itself nor a prosecutor's testimony regarding it established the reason why the order was entered. The court concluded that Swick had not established that the proceedings were terminated in a manner consistent with his innocence.

Defendants maintain that the following exchanges from the January 22 hearing indicate that no reasonable jury could conclude that the dismissal of the Fiorito tickets was not a part of the plea agreement. Dean was represented at the hearing by attorney Charles Piet.

15

| | |
|---|---|
| Piet: | Your Honor, I discussed this matter at length with the State and we have an agreement subject to the Court's approval. |
| The Court: | I've got two files in front of me. |
| Prosecutor: | The one in your hand is going to be a plea on the 6-303 and the insurance count. Counts I and IV are Motion State SOL. |
| The Court: | So if you'll tell me on the 6-303, which is count II. |
| Prosecutor: | $400 and a conviction; and the insurance is going to be $55 and a conviction. |
| The Court: | Okay. |
| Piet: | That's our understanding, Judge. |
| The Court: | Now, I have as to the second file – |
| Prosecutor: | Motion State Nolle Pros. |
| The Court: | All of it? |
| Prosecutor: | All of it. |

. . .

| | |
|---|---|
| The Court (to Dean): | Your attorney reached an agreement with the State in connection with a Driving on a Suspended or Revoked License from October 1st, 2007. In return for a plea of guilty, the State is going to recommend in accordance with the agreement they have with your attorney that it would be a conviction and a $400 fine. |
| | On that same day, time, and place, you were given a ticket for Driving without Insurance. State would recommend on a plea of guilty, a conviction and a $55 fine. Is that what you understand? |
| Dean: | Yes. |
| The Court: | And then as to the other separate file, all those charges would be dismissed. |
| Dean: | Right, yes. |

16

Fiorito Ex. M at 3-5.

After reviewing the full transcript of the hearing, the Court concludes that the transcript does not establish that the dismissal of the "second file" – the Fiorito tickets – was part of the plea bargain on the first file. Nothing that the prosecutor or judge at the hearing said definitively indicated the reason for dismissal of the Fiorito tickets.

The Court draws support from this conclusion from the fact that the two sets of tickets were dismissed in different ways. The Walsh tickets were dismissed by way of a "motion state SOL," which is a procedure used in Cook County circuit court to obtain an "order striking a case with leave to reinstate." *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 100, 820 N.E.2d 455, 459 (2004). After an SOL order, "the matter remains undisposed of" and "[t]he same charges continue to lie against the accused, albeit in a dormant state." *Id.* "[T]he striking of charges with leave to reinstate does not terminate the proceedings against the accused." *Id.* The Fiorito tickets, however, were dismissed by way of a *nolle prosequi* order. "In contrast to an SOL order, which leaves the criminal proceedings pending, a *nolle prosequi* order terminates the charge and requires the institution of a new and separate proceeding to prosecute the defendant." *Id.* at 101, 820 N.E.2d at 460. "A *nolle prosequi* order is a formal entry of record whereby the prosecuting attorney declares that he is unwilling to prosecute a case." *Id.* The fact that the two sets of tickets were dismissed in different ways could support a finding that they were dismissed for different reasons.

Dean had provided evidence from which a reasonable jury could conclude that the Fiorito charges were dismissed in a manner that indicates that the prosecution

lacked reasonable grounds to pursue them. *Swick*, 169 Ill.2d at 513-14, 662 N.E.2d at

1243. Specifically, Dean has submitted an affidavit from his attorney, Piet, in which Piet

states the following:

> Prior to, and on January 22, 2009, I engaged in numerous discussions regarding
> the Fiorito DUI case with the various Assistant State's Attorneys assigned to the
> case. During those discussions we specifically discussed Judge Wolfson's
> previous finding of no reasonable grounds to believe Defendant had been
> intoxicated, and the State's inability to meet its burden of proof due to the fact
> that Mr. Dean had been free from a 90 minute custodial arrest for only 4 minutes
> when he was confronted by Officer Fiorito. More specifically, we discussed the
> fact that during the approximately 90 minutes following Mr. Dean's arrest at
> 10:00 p.m., he had been in custody in the presence of numerous police officers,
> none of whom detected any signs of intoxication, and that Mr. Dean had not
> consumed any alcohol while in police custody. In addition, his arrest by Officer
> Fiorito occurred just outside the police station, approximately four minutes after
> his release. Based upon these discussions, the State indicated its belief that it
> would not be able to meet its burden of proof and dismissed all the tickets,
> including the DUI, issued by Officer Fiorito. . . .
>
> The two cases were disposed of separately and not as one case. The Fiorito
> tickets were not dismissed pursuant to any agreement or compromise which
> pertained in any way to the [Walsh] tickets. The Fiorito tickets were dismissed
> because the State's Attorney's Office could not meet its burden of proof. The
> Fiorito tickets were disposed in James Dean, Jr's favor.

Piet Aff. ¶¶ 7, 9-12.

Defendants contend that the Court should not consider this affidavit because it is

"self-serving, hearsay-ridden, and unsupported." Fiorito's Reply at 10. The Court

agrees that one of the statements from the affidavit – the third sentence of the second

paragraph quoted above – is Piet's conclusion, and the Court accordingly will not

consider that statements.

The Court concludes, however, that Piet's statements regarding what the

prosecutor told him are admissible evidence. Federal Rule of Evidence 803(3)

"exempts from the bar on hearsay '[a] statement of the declarant's then existing state of

mind.'" *Stallworth*, 656 F.3d at 727 (quoting Fed. R. Evid. 803(3)). The prosecutors'

statements as recounted by Piet are not hearsay because they "described the actions

they took . . . and why." *See Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 694 (7th

Cir. 2011) (quoting *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 133

(3d Cir. 2004) (internal quotation marks omitted)). And Piet's statements to the

prosecutors regarding his assessment of the case against Dean are not hearsay

because they are offered not for their truth, but to show the prosecutors' reason for

acting. Finally, the evidence is adequately based on Piet's personal knowledge,

because he participated in the conversations that he recounts. A reasonable jury could

conclude from this evidence that the prosecutor moved for a *nolle prosequi* order for the

reasons recounted by Piet, and thus that the charges against Dean were dismissed in a

manner indicative of his innocence.

For these reasons, the Court denies defendants' motion for summary judgment

on count three.

### 3.    City of Chicago's motion

Dean has asserted a claim against the City of Chicago for indemnification under

745 ILCS 10/9-102. He has also asserted that the violations of his constitutional rights

can be tied to municipal policies. Proof of this allows a plaintiff to hold the municipality

itself liable under section 1983. *Monell v. Dep't of Social Servs. of the City of New

York*, 436 U.S. 658, 694-95 (1978).

The City has moved for summary judgment on the grounds that Fiorito's motion

should succeed. "When there is no underlying constitutional violation . . . there can be

no liability on the part of the municipality." *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). "[N]either *Monell* . . . nor any other [case] authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

The Court has concluded, however, that a reasonable jury could find that Fiorito violated Dean's constitutional rights. The City provides no other argument as to why the Court should grant summary judgment in its favor, and the Court therefore declines to do so.

### Conclusion

For the reasons stated above, the Court denies defendants' motions for summary judgment [docket nos. 329 & 336]. The case remains set for a status hearing on August 6, 2012 at 9:30 a.m.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: August 5, 2012