1           IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3

4 JAMES DEAN, MR., et al.,      )
                           )  Docket No. 09 C 1190
5            Plaintiffs, )
                           )
6        vs.          )
                           )  Chicago, Illinois
7 CITY OF CHICAGO, et al.,    )  August 16, 2012
                           )  10:30 a.m.
8        Defendants. )

9

10              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12 APPEARANCES:

13

14 For the Plaintiff:    SRAGA HAUSER, LLC
                     BY:  MR. CHRISTOPHER L. PETRARCA
15                  19730 Governors Highway
                  Suite 10
16                  Flossmoor, Illinois  60422

17                HAMILTON LAW OFFICE
                     BY:  MS. TORRI L. HAMILTON
18                  11 South LaSalle Street
                  Suite 1000
19                  Chicago, Illinois  60603

20                ERICKSON & OPPENHEIMER, LTD.
                     BY:  MR. JON F. ERICKSON
21                  118 South Clinton Street
                  Suite 200
22                  Chicago, Illinois  60661

23

24

25

```
 1
 2    For the Defendant:       DYKEMA, GOSSETT, ROOKS, PITTS, PLLC
                                   BY:  MS. MOLLY THOMPSON
 3                             10 South Wacker Drive
                               Suite 2300
 4                             Chicago, Illinois  60606

 5                             QUERREY & HARROW, LTD.
                                   BY:  MR. LAWRENCE S, KOWALCZYK
 6                                      MS. STACEY M. ATKINS
                                        MS. GHAZAL SHARIFI
 7                             175 West Jackson Boulevard
                               Suite 1600
 8                             Chicago, Illinois  60604

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
                          Valarie M. Ramsey, CSR, RMR
23                               P.O. Box 16
                          Hazel Crest, Illinois 60429
24                             (708) 860-8482

25
```

1          THE CLERK:  09 C 1190, Dean versus the City.

2          MR.  PETRARCA:  Good morning, your Honor.  Chris

3    Petrarca on behalf of Mr. Dean.

4          MR. ERICKSON:  Good morning, your Honor.  Jon

5    Erickson on behalf of Mr. Dean.

6          MS. HAMILTON:  Good morning, Judge.  Torri Hamilton

7    also on behalf of Mr. Dean.

8          MR. KOWALCZYK:  Good morning, your Honor.  Larry

9    Kowalczyk on behalf of Officer Fiorito.

10          MS. ATKINS:   Good morning, your Honor.  Stacey

11    McGlynn Atkins on behalf of Officer Fiorito.

12          MS. SHARIFI:  Good morning, your Honor.  Ghazal

13    Sharifi, S-h-a-r-i-f-i, on behalf of Officer Fiorito.

14          MS. THOMPSON:  Good morning, your Honor.  Molly

15    Thompson on behalf of the City.

16          THE COURT:  Oh, you're new today.

17          MS. THOMPSON:  Yes.

18          THE COURT:  You're here for Mr. Nolan.

19          MS. THOMPSON:  Yes.  He wasn't able to come in.

20          THE COURT:  Okay.  So there's been one development

21    since yesterday which the parties apprised me of by email.

22    And so the plaintiff is not going to call Mr. -- or not

23    proposing to call Mr. Pipkens or Ms. Klein, and so the, what

24    I'll call the other act evidence issue boils down to

25    Mr. Lopez.

1　　　　　And I believe Mr. Kowalczyk sent me everything by

2　　email.  I have not had an opportunity to read it because this

3　　has kind of been a morning from hell.

4　　　　　MR. KOWALCZYK:  I believe the hand delivery came in

5　　this morning.

6　　　　　THE COURT:  It also came in too.  I don't know.  I've

7　　been out here since 9:00.  So I will deal with that.

8　　　　　Then the other thing that was on the table, and I

9　　looked over the final pretrial order, I guess there's some

10　　objections to witnesses being called.  And some of them I

11　　think kind of drop by the wayside because of some rulings I've

12　　made, but I guess there are a few others.  And so here's the

13　　ones that I have on the plaintiff's may call list that are --

14　　who have been objected to by the defendant:  Kevin Finnegan,

15　　who's a police officer; Joseph Peterson, who's a police

16　　officer; Charles Piet, P-i-e-t, who's a lawyer; Lawrence

17　　O'Reilly, who is also a lawyer; Jill Maderak, M-a-d-e-r-a-k;

18　　Mr. Lopez, we've covered him; Pipkens drops out; and Klein

19　　drops out.

20　　　　　So of those people, who do you actually think you're

21　　going to call?  Do I have to deal with all of them, in other

22　　words?

23　　　　　MS. HAMILTON:  Yes.  I'm sorry, yes.  I believe we

24　　might call -- the only two that we may not call are probably

25　　Finnegan and Peterson.  Those were both police officers.

1    One's a lockup keeper and one's the -- listed as the assisting
2    officer, assisting arresting officer on Fiorito's arrest
3    report of Dean.
4              THE COURT:  Which one is listed on the arrest report?
5              MS. HAMILTON:  Finnegan.
6              MR. KOWALCZYK:  And Officer Finnegan -- they both
7    gave depositions, your Honor, but Officer Finnegan had
8    absolutely no recollection at all whatsoever of the event.
9    And I believe it was Michael Oppenheimer who was at that dep
10   from plaintiffs.
11             THE COURT:  But he's on a report?
12             MR. KOWALCZYK:  That is correct, Judge.  His name
13   appears on the report.
14             THE COURT:  And on Peterson, you said he's a lockup
15   keeper?
16             MS. HAMILTON:  Yes.
17             THE COURT:  So what's the purpose for which -- I'm
18   not suggesting there isn't one, but what's the purpose for
19   which you'd be calling him?
20             MS. HAMILTON:  The lockup keeper actually fills
21   out -- does an evaluation of the arrestee and fills out a is
22   he intoxicated or not.
23             THE COURT:  I'm not going to preclude them from being
24   called.  It may be that they don't know anything or that
25   they're going to say they don't know anything, but they're

1    both identified in documents as people who had some contact
2    with Mr. Dean, so I don't think there's an appropriate basis
3    to prevent the plaintiff from call them.
4            As far as Mr. Piet is concerned, I frankly think I've
5    dealt with Mr. Piet largely in the summary judgment motion.  I
6    mean, I think I said that in terms of what's in his affidavit
7    there was one thing that I thought was hearsay, the rest of it
8    I didn't think was hearsay, and I thought there was a
9    sufficient foundation for it.  So I don't think I need to do
10   anything further on Piet.  I mean, there may be some
11   objections that come up when he's called, but --
12           Let me skip over O'Reilly for a second.  What's Jill
13   Maderak?
14           MS. HAMILTON:  Jill Maderak the records keeper for
15   OEMC, Judge.  She would be called basically -- in the past
16   I've used her to explain what the OEMC records which are --
17   can be sort of confusing without some help.  So that's what
18   she's on the list for.
19           THE COURT:  Now that you know that, do you think
20   there's some basis for me to prevent them from calling her?
21           MR. KOWALCZYK:  If it's relaying foundation, we may
22   even be able to agree on certain foundation.
23           THE COURT:  I'm not going to preclude it.  I'd like
24   you to try to agree, but I'm not going to force the plaintiff
25   to stipulate.  If you think it explains it better to have a

1    live witness, then that's fine.

2         Lopez I'm going to talk about later, and so that

3    leaves O'Reilly.  So who's O'Reilly?

4         MS. HAMILTON:  Lawrence O'Reilly was at the time of

5    Mr. Dean's prosecution he was the supervisor -- state's

6    attorney supervisor in traffic court.  I actually disclosed

7    him by name in my 26(a)(1)s.

8         THE COURT:  What would you be calling him for?  Did

9    he have some involvement in the discussions that led to the

10   disposition of the case?

11        MS. HAMILTON:  Yes.

12        MR. KOWALCZYK:  This was the ruling your Honor made

13   yesterday on the 134 nolles.

14        MS. HAMILTON:  No, Judge.

15        THE COURT:  I'm talking about on Mr. Dean's case.

16        MS. HAMILTON:  Yes.

17        THE COURT:  So they're saying that he may have had

18   some involvement in the discussions that led to the

19   disposition of Mr. Dean's case.  So I'm not going to preclude

20   him either because it's potentially relevant on the favorable

21   termination issue.

22        Okay.  So there's a couple of objections that the

23   defendant listed -- or that the plaintiff listed to defense

24   witnesses, and so I'm going to just go through the laundry

25   list and you'll tell me which ones you're going to call and

1    then we'll deal with them.

2              So you've got an assistant state's attorney named

3    Michael Rusch, R-u-s-c-h.

4              MR. KOWALCZYK:  Judge, he was the one on Dean's --

5    the plea agreement.  And your Honor saw the transcript.

6              THE COURT:  So he was on the state side of the

7    discussion.

8              MR. KOWALCZYK:  That's correct.

9              MS. HAMILTON:  Withdraw our objection, Judge.

10             THE COURT:  Okay.  So that objection is withdrawn.

11             Kevin Rocio, R-o-c-i-o.

12             MR. KOWALCZYK:  Disclosed early on by the plaintiff

13   in his deposition as the gentleman who was with him at

14   Japonais, and we listed him --

15             THE COURT:  In the supplementals.

16             MR. KOWALCZYK:  That's correct.

17             MS. HAMILTON:  We've actually had contact with him,

18   so we withdraw our objection.

19             THE COURT:  Okay.  So that objection is withdrawn.

20             And then it looked like the other two -- so does

21   either -- so Michael been (phonetic) and Evelyn Hernandez, do

22   they relate to Lopez in some way?

23             MS. HAMILTON:  Yes.

24             MR. KOWALCZYK:  They both do, Judge.  They won't be

25   called if Lopez doesn't hit the stand.

1       THE COURT:  Okay.  So I think I just defer those and

2   wait and see what happens.

3       MR. KOWALCZYK:  And the same, I believe, there's a

4   lockup keeper also.  I think it was Officer --

5       THE COURT:  You're right.

6       MR. KOWALCZYK:  -- Kunabis (phonetic) or Ziamba

7   (phonetic).  I apologize to the court.  It was of one those --

8       THE COURT:  Kunabis.

9       MR. KOWALCZYK:  -- who did testify that Lopez

10  appeared intoxicated at the time of lockup.

11      THE COURT:  There's no objection to him actually.

12      MS. HAMILTON:  Yes.  And one of them actually

13  probably relates to one of the witnesses we've withdrawn, one

14  of those two at the bottom of the page there.

15      THE COURT:  Kunabis and Ziamba?

16      MS. HAMILTON:  Correct.

17      MR. KOWALCZYK:  The corresponding officer.

18      THE COURT:  You'll get that sorted out.

19      MS. HAMILTON:  Yes, Judge.

20      THE COURT:  So as far as all of these exhibits, I

21  mean, it looked like there was maybe a couple of dozen that

22  were objected to, so all of these -- I mean a number of

23  plaintiff's exhibits that are objected to are police reports.

24  So like 4, 5, 6, 7 and a bunch of others, I don't -- I'm going

25  to confess I did not take this home and look through the

1    binder, okay.  I'm going to assume that at least 4, 5, 6, and
2    7 were authored by Officer Fiorito.
3            MS. HAMILTON:  Yes, Judge.
4            THE COURT:  So those aren't hearsay.
5            Eight is -- what's 8?  Why do you need 8?  8 is the
6    auto pound yard pass.  So this is the thing they give somebody
7    to go get their car out of the pound?
8            MS. HAMILTON:  Yes, after their car has been
9    impounded.  It just corroborates that the car was impounded,
10   that they took possession of the car.  He didn't park it
11   there.  It was actually impounded, park it in front of the
12   fire hydrant.  There also is a fee associated with having to
13   get the car out.
14           THE COURT:  Whose signature is this?
15           MS. HAMILTON:  That's the actual -- it says
16   roommate's signature, to whom he still owes the money.
17           THE COURT:  All right.  So this is something that you
18   actually want to use, not just something you've put on the
19   list because you need it on the list.
20           MS. HAMILTON:  Yes, Judge.
21           THE COURT:  Okay.  So talk me through what the
22   objection is to this, Mr. Kowalczyk.
23           MR. KOWALCZYK:  Go ahead.
24           THE COURT:  Or Ms. McGlynn Atkins.
25           MS. ATKINS:  Good morning, your Honor.

1       The auto pound yard pass, it is signed not by
2  Mr. Dean, but by his alleged roommate, the actual owner of the
3  vehicle.  Mr. Dean's name does not appear on it anywhere.
4       Miss Hamilton also talked about a related document,
5  which would be the actual receipt for the impoundment fee.
6       THE COURT:  Is that in here too somewhere?
7       MS. ATKINS:  That would be -- I believe it's
8  Plaintiff's Exhibit No. 17.
9       THE COURT:  You are correct.  It is.
10       MS. ATKINS:  Those two documents, again, they don't
11  have Mr. Dean's signature on them.  And, moreover, Mr. -- and
12  please forgive me if I butcher his last name.  I think it's
13  Simchak (phonetic).  The owner of the vehicle.
14       THE COURT:  Not even close, but I get it.
15       MS. ATKINS:  He's not disclosed as a witness.  He's
16  not expected to testify at trial as to the alleged money owed
17  to him for the impoundment or to talk about anything relative
18  to the actual yard pass itself.
19       THE COURT:  Pass for a second.
20       So what's Mr. Dean's story as to how the car got out
21  of impoundment?
22       MS. HAMILTON:  So it was the roommate's car, so only
23  a roommate can actually get the car out of the pound.
24       THE COURT:  Who forked over money?
25       MS. HAMILTON:  The roommate did, but the debt --

1      THE COURT:  And he says Mr. Dean owes it to him.

2      MS. HAMILTON:  Correct.

3      THE COURT:  Okay.  And so this is part of Mr. Dean

4   proving what his damages are.

5      MS. HAMILTON:  Yes, Judge.

6      THE COURT:  Okay.

7      MS. ATKINS:  Your Honor, if I may, I don't believe

8   that there's been any evidence offered that Mr. Dean actually

9   paid his roommate back.

10     THE COURT:  Oh, they're not saying he paid him.

11  They're saying he owes it to him.

12     MS. ATKINS:  Okay.  I thought she just referred it to

13  as a debt that he actually owes to him.

14     THE COURT:  No.  Simchak paid for it, and then he

15  says, Dean, you owe this to me because it's your fault that my

16  car got impounded.

17     MS. HAMILTON:  Yes, Judge.

18     THE COURT:  That's the theory.

19     You know, with a proper foundation, both of these

20  documents are business records of the City of Chicago.

21  There's just no question about it.  Now, if you want to make

22  some sort of record custodian come in and say, oh, yeah, this

23  is what these things are, and we keep them, and it's in the

24  ordinary course of business, then fine, go ahead and do that,

25  but you ought to be able to come up with a stipulation.

1    I mean, your argument really here isn't or at least

2  shouldn't be about whether the pieces of paper come in.  It

3  should be about their significance, you know, whether, first

4  of all, it's really damages because we don't have Simchak

5  here, ladies and gentlemen, how do we even know that he's

6  actually asked Mr. Dean for the money back?  You have Mr. Dean

7  to believe for that.  Do you believe anything the guy says?

8  Et cetera, et cetera.  I think you ought to be able to work

9  past that one.  So that's it.

10    9 is the bond slip, which Mr. Dean did sign.  At

11  least I assume that's Mr. Dean.  Or who posted the money?  Oh,

12  that's Mr. Simchak's signature again.  At least it looks like

13  a similar scrawl.  I'm not sure that it is actually.

14    No, that's got to be his because it says defendant's

15  signature.

16    So what are you putting in the bond slip for?

17    MS. HAMILTON:  Judge, the bond slip shows what

18  time -- this is relevant -- kind of key to plaintiff's case.

19    THE COURT:  What time he got --

20    MS. HAMILTON:  Yeah.  Bond slip -- there's two bond

21  slips.  So one shows when he bonded out for the arrest of

22  Mr. Walsh, which is relevant because it's some four minutes

23  later that he's been, you know, arrested by --

24    THE COURT:  Okay.  I get it.

25    MS. HAMILTON:  And then the second one shows --

1  THE COURT:  When he was released from custody.

2  MS. HAMILTON:  Ahead of me as usual, Judge.

3  THE COURT:  Those are both admissible.

4  Event queries.  So I'm assuming -- I mean, this is

5  going to end up being a foundational exhibit.  And this has to

6  do with, again, setting the timeline, I'm assuming?

7  MS. HAMILTON:  Yes.

8  THE COURT:  So assuming the foundation is laid, I

9  think those are properly admissible.

10  The transcript of the January 22 court hearing.

11  Maybe I'm wrong, but as I read the summary judgment materials,

12  it's not an issue about what was said, it's an issue about

13  what it meant and what -- and how it gets interpreted and how

14  it fits into the pigeonholes of favorable termination.  So

15  what's the objection to putting in the transcript?

16  Oh, it's just that it was mis-titled.  The jury is

17  not going to get a list.  So just let's say that it's called

18  transcript of January 22nd, 2009.  Is there a problem with it?

19  MS. ATKINS:  No, Judge.

20  MR. KOWALCZYK:  No, Judge.

21  THE COURT:  Fine.  Then that's admitted.

22  No. 14 is the statutory summary suspension order.  We

23  talked about this yesterday.

24  MR. KOWALCZYK:  That's correct.

25  MS. SHARIFI:  We'll be submitting briefing on it.

1    THE COURT:  That's right.  You're going to submit

2  something extra on that.

3    15 is the transcript of that hearing.  Same deal.

4    17 we've talked about.  That's part of the impound.

5    18 is the CBR to the attorney.  So who posted the

6  bond money, the five hundred bucks, in other words?  Who's

7  Mr. Dean going to testify posted the bond money?

8    MS. HAMILTON:  Judge, I believe it was his roommate

9  as well that posted --

10    THE COURT:  Mr. Simchak.  So he's out another five

11  hundred bucks, okay, which Mr. Dean is going to say he hasn't

12  paid back yet.

13    MS. HAMILTON:  Judge, I can't answer that question at

14  the moment.  I'm sorry.  Mr. Dean is out of town, and I

15  haven't had as much time with him as I would like before

16  appearing in court.

17    THE COURT:  Mr. Dean goes out of town a lot.  I know

18  this.  I've heard him tell me this before.

19    Okay.

20    MS. ATKINS:  Your Honor, if I may also, if I'm

21  remembering the CBR court order correctly, Attorney Piet

22  had --

23    THE COURT:  Does he pronounce it Piet or does he

24  pronounce it --

25    MS. HAMILTON:  I believe it's Piet.

1       MS. ATKINS:  Piet.

2       THE COURT:  He doesn't pronounce it the French way.

3  He pronounces it the Chicago way.  It's like Goethe Street,

4  you know.

5       MR. KOWALCZYK:  The only way to get there in a cab.

6       THE COURT:  Gerte, what's that?

7       MS. ATKINS:  Well, if I remember correctly, the

8  attorney had filed a petition to have the bond moneys turned

9  over to him for partial payment --

10      THE COURT:  Right.

11      MS. ATKINS:  -- or full payment --

12      THE COURT:  That's what this order says.

13      MS. ATKINS:  -- of attorney's fees.  And so I don't

14  know -- again, in the absence of the roommate saying that the

15  money is owed back to me or I gave it as --

16      THE COURT:  I assume Mr. Dean is going to -- I've

17  been told Mr. Dean is going to say that he's been told he owes

18  the money.  That's not hearsay.  It's that you must pay me.

19  That's not hearsay.  And so I think your objection really goes

20  to weight, not admissibility.

21      I mean, it's going to be, I think, a pretty, you

22  know, powerful argument that the guy has no damages because,

23  you know, where's Mr. Simchak and why hasn't he gone after

24  Mr. Dean for all, lo, these many years, but I think that's a

25  weight issue.

1          As far as the deposition transcript of Fiorito's

2  testimony, so I'm not going to tell -- I mean, anything that

3  the party has said in deposition can be introduced by the

4  other party.  I'm not going to tell people how to put in their

5  case, you know, whether you just want to put in the deposition

6  and you rest and let the defendants call Fiorito or whether

7  you are going to call him and stick the deposition in his face

8  at some points in time or whether you're going to let him

9  testify and then put in the deposition to show contradictions,

10  but I don't think there's any basis to exclude the deposition

11  testimony.

12          The Lopez stuff I'm going to deal with.  That's 20.

13          Number 21 and 22 are out.

14          Fiorito's oath of office, what's that all about?

15          MS. HAMILTON:  Judge, he actually -- I think it's

16  relevant to punitive damages.  He has signed an oath of office

17  to be a police officer, whether his oath is to uphold the

18  constitution, and he signed it, so I think it's also a

19  statement of a party opponent.

20          THE COURT:  Tell me what the objection is to that.

21          MR. KOWALCZYK:  Judge, the objection is really

22  relevance.

23          THE COURT:  It's a weight issue.  The objection is

24  overruled.

25          As far as the scene photos are concerned, I'm

1    assuming you have -- and the other photos, I'm assuming you

2    have seen them now.

3              MR. KOWALCZYK:  We've exchanged -- we've gotten

4    emails from plaintiff's counsel, and the one extra we had --

5    all demonstratives have been exchanged.

6              THE COURT:  Are both sides okay on all that, or are

7    there issues that I have to decide?

8              MR. KOWALCZYK:  I think at this time, and we'll work

9    them out.

10             THE COURT:  You'll work them out.  Fine.

11             All right.  Flipping over to the defense exhibits,

12   looks like there's just a couple of objections.

13             So you've got No. 2 is the inventory slip, and so

14   what's the purpose that you're wanting to put this in for?

15             MS. ATKINS:  Inventory slip, your Honor, is

16   Mr. Dean's materials that were inventoried.

17             THE COURT:  No, I know what it is.  What does it

18   show?

19             MR. KOWALCZYK:  The significance, Judge, is there's a

20   receipt for minibar that's listed.

21             THE COURT:  Oh, receipt for minibar.  Okay.

22             MS. HAMILTON:  Judge, our objection to that is we

23   don't have the actual receipts.  We don't even know what date

24   or anything it says on it, number one.

25             Number two is that it's hearsay as offered by the

1  defendants because they're offering a statement of their own
2  party.

3  THE COURT:  No.  They're offering a statement of
4  their own party that the defendant had this thing on him.
5  That's not hearsay.

6  MS. HAMILTON:  Isn't the --

7  THE COURT:  We recovered this from the defendant when
8  we searched him before we put him in the lockup and it was a
9  receipt for a minibar.  And then it's up to everybody to argue
10 what the significance of it is, if anything.

11 MS. HAMILTON:  It would be the plaintiff's position
12 that he can testify to that but to introduce the document
13 is -- we could introduce it, but they can't because they're
14 introducing an out-of-court statement by their own --

15 THE COURT:  This is not like your sort of standard
16 narrative police report in which a police officer is
17 essentially relating what was told to him or her about an
18 event.  This is -- if this can't get in as a business record,
19 I'm not sure what can.  And so, you know, again, if you want
20 to make people lay the foundation that it's a regular practice
21 to record what we take from the person, et cetera, et cetera,
22 go ahead and do that, but I really think that you should be
23 spending more time arguing about significant stuff.  I think
24 you'll be able without much difficulty to lay a business
25 record foundation for it.

1          No. 3 is photographs used in Fiorito's deposition, so

2   you're going to deal with that it sounds like.

3          MS. HAMILTON:  Yes, Judge.

4          THE COURT:  Lopez we've dealt with.

5          Benz, let's hold that until I deal with Lopez.

6   That's No. 8.

7          9, 10, and 11 are basically off the table because

8   that's Klein and Pipkens.

9          And that's it.

10         MS. HAMILTON:  Judge, there's just two other things

11  that we need to address with your Honor with the pretrial

12  order.

13         THE COURT:  Yes.

14         MS. HAMILTON:  The first is Mr. Erickson had an

15  opportunity to speak briefly before we came into court about

16  we wanted to seek your Honor's leave to amend the pretrial

17  order just to add another exhibit that may be used for

18  impeachment purposes only.  It's the DUI detection manual that

19  we would like to use if necessary.

20         THE COURT:  It's a police department document of some

21  sort?

22         MS. HAMILTON:  It's actually created by the National

23  Highway Institute of Traffic Safety.

24         THE COURT:  You're going to be able to lay some sort

25  of foundation that this is what police officers follow?

1      MS. HAMILTON:  With Officer Fiorito, yes.

2      THE COURT:  Assuming they can lay the foundation, is

3   there a problem with this one?

4      MR. KOWALCZYK:  It was just given to us today, Judge,

5   but I think we can probably --

6      THE COURT:  Okay.  Look it over, and you'll tell me

7   on Monday if there's a problem.

8      What's the second thing?

9      MS. HAMILTON:  Your Honor, there's one other issue

10  that we need to address; if it's possible, we'd like to go off

11  the record about it.

12     MR. KOWALCZYK:  Probably two issues, actually, off

13  the record.

14     THE COURT:  So let me tell you the two other things

15  that I need to tell you on the record.

16     So, number one, you will get tomorrow, probably in

17  the morning, hopefully in the morning, by email -- and what I

18  need somebody to do is pull out a piece of paper and put let's

19  say two people per side that I'm going to send the draft jury

20  questionnaire and the draft preliminary jury instructions to.

21  You'll probably get those in two separate emails in the

22  morning with an email that says give me your comments and

23  responses by 3:00 in the afternoon or something like that with

24  a copy to the other side.

25     I will instruct the jury before opening statements,

1    and that will include instructions on the elements of what the
2    claims are.

3           I allow jurors to ask questions.  I think you've all
4    tried cases in front of me before.  At least somebody on each
5    side has tried cases in front of me before, so you know how
6    that works.

7           And the trial -- be here at 9:45 on Monday, and we
8    won't, generally speaking, go past 4:30 unless there's a
9    witness on the stand that's within a few minutes of being
10   done.  The lunch break will be at 12:30, and we'll resume at
11   either 1:30 or 1:45 depending upon what other cases I have up
12   at 1:30.

13           I think that's everything I needed to tell you.
14           So come over here.
15           (Discussion at side bar off the record.)
16           (Which were all the proceedings had in the
17           above-entitled cause on the day and date aforesaid.)
18                 *    *    *    *    *    *    *
19                   C E R T I F I C A T E
20
21           I hereby certify that the foregoing is a true and
22           correct transcript of the above-entitled matter.
23
24           /s/ Valarie M. Ramsey                    08-17-2012
25           _____          _____
             Court Reporter                      Date